COMMONWEALTH of Pennsylvania, Appellee

v.

Martin CAIN, Appellant.

Superior Court of Pennsylvania.

Argued May 10, 2011.

Filed Aug. 12, 2011.

Richard T. Brown, Jr., Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee. (Unable to appear – Submitted).

BEFORE: MUNDY, FITZGERALD,* and STRASSBURGER,** JJ.

OPINION BY STRASSBURGER, J.:

Martin Cain (Appellant) appeals from the judgment of sentence of ten to twenty years' incarceration entered on June 25, 2009 following his conviction after a jury trial of robbery, theft by unlawful taking, receiving stolen property, and terroristic threats.[1] We remand for proceedings consistent with this opinion.

The trial court summarized the facts as follows:

On December 26, 2007 at 9:20 P.M., [Derrick McGill (McGill) ] left his brother's ... house in Philadelphia located at 1320 West Somerset Street and walked west toward Broad Street with five-hundred [and] fifty dollars in cash he was taking to the bank. At the corner of Somerset and Broad[, McGill] saw Appellant and two other men. Appellant approached [McGill] and said the other men were trying to rob him and asked to borrow [McGill's] phone, to which [McGill] obliged. Appellant used the phone, but would not return it, while he

questioned [McGill] about how much money he was carrying. Appellant, still holding the phone hostage, told [McGill] to follow him. [McGill] did not resist because Appellant was holding his hand in his pocket "like he had a gun." Appellant never mentioned a gun and [McGill] never saw a gun during the altercation.

The two men walked a few blocks to Cambria Street and argued about their current predicament. Eventually, and with reluctance, [McGill] conceded to Appellant's demands and gave up the five hundred [and] fifty dollars he was carrying because he was nervous and "did not know if [Appellant] had a gun or not." Appellant eventually walked away with the phone and the money and [McGill] flagged down a police car a few minutes later. [McGill] rode with the police and circled the block a few times, but could not find Appellant [and] was instructed to call the police if he saw the man again.

Trial Court Opinion (TCO), 9/30/2010, at 1–2 (pages unnumbered) (citations omitted).[2]

A jury trial presided over by Judge Willis W. Berry, Jr. resulted in Appellant's convictions on April 29, 2009. Judge Berry sentenced Appellant on June 25, 2009, the same day on which the Court of Judicial Discipline filed its opinion and order suspending Judge Berry from his office based upon finding, *inter alia*, that Judge Berry violated 18 Pa.C.S. § 3926(b).[3] *See In re Berry*, 979 A.2d 991, 1003 (Pa.Ct.Jud. Disc.2009).

---

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. §§ 3701(a)(1)(ii), 3921(a), 3925(a), and 2706(a), respectively.

2. We note that the certified record before us does not include the trial transcripts.

3. 18 Pa.C.S. § 3926(b) provides: "[a] person is guilty of theft if, having control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto."

On July 6, 2009, Appellant filed a post-sentence motion raising, among other issues, that Judge Berry had a conflict of interest in having presided over Appellant's trial while possibly facing investigation and indictment by the same office that prosecuted Appellant. The post-sentence motion was denied by operation of law on November 5, 2009.[4] Appellant filed a timely notice of appeal. On January 20, 2010, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 14 days. Appellant filed his concise statement on February 9, 2010,[5] raising, *inter alia*, the issues of Judge Berry's conflict of interest and an evidentiary error.

Judge Berry filed his opinion on July 30, 2010. Apparently there was some confusion, as the court states that Appellant failed to file his 1925(b) statement. Judge Berry proceeded to address some of the issues raised by Appellant in his post-sentence motion, but did not acknowledge or address the question of whether he should have recused himself.

In his brief on appeal, Appellant asks this Court to review two issues:

1. Did the Hon[orable] Willis W. Berry, Jr. err by presiding over this trial and sentencing when Judge Berry was facing possible criminal prosecution by the same office?

2. [Did the trial court err in allowing the jury to hear] evidence of a different alleged robbery?

Appellant's Brief at 2.

 We begin with Appellant's second issue.

Our standard of review for considering whether a ruling on the admissibility of evidence was proper is well settled:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 94 (2009) (internal quotations and citations omitted).

At trial, the trial judge allowed the Commonwealth to call Paul Bowell to testify about his dealings with Appellant on December 10, 2007, which was approximately two weeks before the incident at issue in this case. The trial court summarized Bowell's testimony as follows:

> [Bowell] was at work painting the inside of the PNC Bank at 3200 North Broad Street. Around 6:45 P.M. Bowell was on a cigarette break sitting in his van directly outside when Appellant jumped in the van with him. Appellant asked to borrow Bowell's cell phone while he patted Bowell's pockets and asked if he had any money. Bowell gave Appellant his work phone but when he refused to give him his personal phone, Appellant said "I just want to let you know I have a

---

4. "If the judge fails to decide the [post-sentence] motion within 120 days, ... the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(a).

5. Appellant filed his 1925(b) statement 20 days after the trial court's order, rather than within the 14 days allotted by the trial court. However, the trial court erred on allotting only 14 days, as Pa.R.A.P. 1925(b)(2) requires a trial judge to allow an appellant at least 21 days to file his statement. As such, Appellant's 1925(b) statement was timely.

gun on me." Bowell exited the van when Appellant was distracted, ran into the bank, and called the police. Bowell's friend called the work cell phone [that] Appellant was still carrying to try and lure Appellant back. Appellant returned to exchange the phone for money, spotted the cops, and stated on the phone "them cops better not be for me because my friends are around here and we'll shoot this place up."

TCO, 9/30/2010, at 4 (pages unnumbered) (citations omitted).

■ While "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," Pa.R.E. 404(b)(1), "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2). "Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super.2010) (quoting *Commonwealth v. Taylor*, 448 Pa.Super. 238, 671 A.2d 235, 240 (1996)).

Appellant argues that the robberies lacked sufficient similarity because "the only thing both robberies had in common was that a cell phone might have been taken." Appellant's brief at 6. We disagree. As the trial court explained:

The evidence of prior bad acts was correctly admitted because of the similarity in time and place of the two robberies. Both incidents began with Appellant borrowing a cell phone and quickly escalated to Appellant asking for money and threatening the victim with the possession of a gun, either blatantly with words or hand gestures to instill the fear of a gun. 3200 North Broad Street is less than a half mile from Broad and West Somerset Street, the location of the present incident, and the [B]owell robbery was only sixteen days prior. The [trial c]ourt found the nexus between time, place, and method of the two events to be similar enough to allow the evidence of the prior act to be admitted.

TCO, 9/30/2010, at 4–5 (pages unnumbered) (citations omitted).

Furthermore, the trial court gave the jury a cautionary instruction as to the limited value of the evidence of the Bowell incident. The trial court explained that the evidence may only be considered to show a common scheme, and not to show that Appellant has criminal tendencies. The jury was specifically instructed that it could not convict Appellant because it believed that he engaged in improper conduct at another time. *See* Commonwealth's Brief at 13 (quoting N.T., 4/28/2009, at 25–26).

We see no abuse of discretion or error of law committed by the trial court in admitting Bowell's testimony. This issue is without merit.

■ The remaining question for our review is whether it was improper for Judge Berry to try this case while he himself faced possible prosecution by the Commonwealth, one of the parties. "[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case *or whenever he believes his impartiality can be reasonably questioned.*" *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727, 731 (1983) (quoting *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652, 654 (1973)) (emphasis in cases cited). "A jurist's impartiality is called into question whenever there are factors or circumstances that

may reasonably question the jurist's impartiality in the matter." *In Interest of McFall*, 533 Pa. 24, 617 A.2d 707, 713 (1992) (citations omitted).

■ Our Supreme Court has long recognized

that even the appearance of impropriety is sufficient justification for the grant of new proceedings before another judge.... A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. The *McFall* Court further explained that, [a] tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings. A trial judge should not only avoid impropriety but must also avoid the appearance of impropriety.

*Joseph v. Scranton Times L.P.*, 604 Pa. 677, 987 A.2d 633, 634 (2009) (internal citation and quotations omitted). "[T]he appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of either of these elements." *McFall, supra* at 713 (quoting *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652, 654 (1973)).

Here, Appellant argues that Judge Berry was aware that his business practices had drawn attention as early as April 2007. Appellant's Brief at 4. Judge Berry was under investigation by the Judicial Conduct Board prior to hearing Appellant's case, as the complaint against Judge Berry was filed in the Court of Judicial Discipline (CJD) on January 5, 2009. *Id.* Appellant argues that, given these circumstances, Judge Berry had to believe, at the time of Appellant's trial, that the Philadelphia District Attorney's Office was investigating his criminal activity or might choose to prosecute him therefor.[6] This suggests that Judge Berry "might have been tempted, consciously or not, to curry favor with prosecutors." *Id.* at 5.

Such allegations clearly place Judge Berry's impartiality at issue. Because Judge Berry does not address Appellant's recusal issue in his opinion, we do not know whether he had knowledge that, at the time he presided over Appellant's trial and sentencing, he faced criminal investigation from Appellant's prosecutors. Without this information, this Court is unable to determine whether sufficient reason to question Judge Berry's impartiality exists to warrant granting Appellant relief.

We also do not know when Appellant became aware of the criminal investigation of Judge Berry by the District Attorney's Office. If Appellant was aware of an existing or imminent investigation prior to trial or sentencing, Appellant may have waived this issue by failing to raise it earlier. *See, e.g., Commonwealth v. Boyd*, 835 A.2d 812, 820 (Pa.Super.2003) (quoting *Commonwealth v. Stafford*, 749 A.2d 489, 501 (Pa.Super.2000)) ("It is well-settled that a party seeking recusal or disqualification must raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred.").

Therefore, we remand this case for an

---

**6.** Shortly after the CJD published its decision finding that Judge Berry's conduct violated a criminal statute, Judge Berry did recuse himself from hearing criminal cases. According to the article attached to the Commonwealth's brief, Judge Berry's recusal came at the request of the District Attorney's Office. *See* Amaris Elliott–Engel, *DA's Office Won't Prosecute Berry, Who Will Return to Hear Criminal Cases,* The Legal Intelligencer Blog, December 18, 2009.

evidentiary hearing [7] for the determination of the following facts: (1) when Appellant or his counsel learned that Judge Berry was being investigated by the District Attorney's Office; and (2) when Judge Berry learned that he was being investigated by the District Attorney's Office.

Case remanded for further proceedings consistent with this opinion. Panel jurisdiction retained.

**7.** The parties may want to consider moving for the appointment of an out-of-county judge to hear this matter.