J-S53020-12

2014 PA Super 177

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MAURICE L. DOZIER | |
| Appellant | No. 1386 EDA 2010 |

Appeal from the Judgment of Sentence of December 12, 2002
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-1103561-2000

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY WECHT, J.:                                        **FILED AUGUST 20, 2014**

Maurice Dozier appeals his December 12, 2002 judgment of sentence.

We affirm.

The trial court has provided the following factual history of this case:

The evidence admitted at trial established that in the early morning hours of October 24, 2000, [A.R.] was brutally assaulted and raped in her bed in front of her six-year-old daughter and infant son. At that time, [A.R.] lived with her two children . . . in the City and County of [Philadelphia].

Earlier that evening, [A.R.] saw [Dozier] on the street and asked him if he could fix her refrigerator. She had known him from the neighborhood since childhood. [Dozier] came to [A.R.'s] house and worked on the refrigerator; he spent ten to fifteen minutes in the house. [Dozier] returned a few times that evening, at one point selling her a microwave. [A.R.] had a male guest at the house from 12:30 a.m. to 5:00 a.m. on October 24, 2000. After her guest left, [A.R.] went upstairs to sleep in the bedroom with her children. Some time later, [A.R.] awoke to a noise in her

_____

[*]     Retired Senior Judge assigned to the Superior Court.

bedroom. It was still dark, but she saw [Dozier] standing over her. [A.R.] screamed, and [Dozier] hit her on the head with a hard object. [Dozier] pulled down and ripped her pants and underwear, while [A.R.] shouted, "Don't do this. Not in front of my kids." [Dozier] digitally penetrated [A.R.] and tried to penetrate her with his penis. [Dozier] turned her over and placed a blanket over her face and raped her, while [A.R.] kicked and pleaded for him to stop. [Dozier] carried with him a metal bar wrapped in tape and a flashlight[,] the same tools he used to repair the refrigerator that night. During the attack, [Dozier] pushed the metal bar against [A.R.'s] throat and choked her with it. [Dozier] also choked [A.R.] with his hands; he was wearing latex gloves. [A.R.] begged [Dozier] to ". . . stop, don't kill me, just let me go. I promise I won't tell anybody. I won't do anything." Afterwards, [Dozier] got up and left. [A.R.] quickly got dressed, picked up her children, and ran to her neighbor[']s house, where she called the police.

The police arrived within ten minutes and [A.R.] told the officers that she was raped and that it was [Dozier] who did it. While [A.R.] was inside her neighbor's house talking to the police, her neighbor approached Police Officer John McLaughlin and brought him into her house. She told him the perpetrator was walking down Napa Street. Officer McLaughlin approached [Dozier], stopped him, and informed him that he was being investigated for a rape that just occurred. [A.R.] was taken outside to view [Dozier] and she positively identified him as her assailant. [A.R.] was then transported to the Episcopal Hospital for a medical examination and rape kit.

There was a stipulation to the Police Department Criminalistic[s] Laboratory report that examined the rape kit taken from [A.R.]. The vaginal, v[u]lvular, and cervical areas tested positive for sperm. The vaginal and cervical areas tested positive for prostatic acid phosphate, which is an enzyme found in semen. The presence of this enzyme is indicative of recent sexual activity.

The DNA analysis was conducted by Chad Summerfield and Kevin Knox, forensic scientists at the Philadelphia Police Department. They conducted a forensic examination of the rape kit and other physical evidence collected from the bedroom. Mr. Summerfield tested the shorts [A.R.] had on the night of the attack and the fitted sheets from her bed. He also had blood samples from the complainant and [Dozier]. Mr. Summerfield

testified that [A.R.'s] DNA was found on the shorts. [Dozier] was the source of the DNA extracted from the bed sheet. He also testified that he would expect to see this DNA profile one time in 4.5 quadrillion. DNA analysis was also performed on the sperm found in the complainant's vagina indicating a one in 53,000 match. That analysis excluded 99.99% of the African-American population. Mr. Summerfield concluded to a reasonable degree of scientific certainty that the seminal stain from the sheet belonged to [Dozier].

Trial Court Opinion ("T.C.O."), 1/31/2014, at 3-5 (citations to the record omitted).

The trial court related the procedural history as follows:

Following a non-jury trial on July 11, 2002, before the Honorable Willis W. Berry[,] Jr., [Dozier] was convicted of Rape, Aggravated Assault, Aggravated Indecent Assault, Possessing Instruments of Crime ("PIC"), Unlawful Restraint, Simple Assault, and Recklessly Endangering Another Person.[1] On December 12, 2002, Judge Berry sentenced [Dozier] to [terms] of incarceration for the Rape and Burglary convictions of . . . ten (10) to twenty (20) years, to run concurrently; for Aggravated Assault, ten (10) to twenty (20) years, to run concurrent[ly] with the Rape conviction; for Indecent Assault, one (1) to (2) years, consecutive [to] the Rape Conviction; for the PIC conviction, two-and-one-half (2½) to five (5) years, to run consecutive[ly] to the Rape conviction; [and] for Unlawful Restraint, one (1) to two (2) years, consecutive with the Rape conviction. An aggregate term of fourteen-and-one-half (14½) to twenty-[nine (29)] years of incarceration was imposed.

No direct appeal was filed. A timely [petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq.*] was filed on October 31, 2003. That petition was dismissed without [a] hearing on April 11, 2005.

---

[1] 18 Pa.C.S. §§ 3121, 2702, 3125, 907, 2902, 2701, 2705 (respectively).

[Dozier] filed a second PCRA petition on July 21, 2008. Judge Berry issued an order reinstating [Dozier's] appellate rights *nunc pro tunc* on April 22, 2010. [Dozier] filed a notice of appeal on May 21, 2010. Following that appeal, Judge Berry filed an opinion on March 23, 2011. A ***Grazier*** hearing[2] was held on April 19, 2011, and [Dozier] was permitted to represent himself *pro se*.

After numerous subsequent filings with the Superior Court, the case was remanded to the trial court to file a Pa.R.A.P. 1925(a) opinion on [Dozier's] reinstated direct appellate claims. By that time, however, Judge Berry had retired from the bench. The case was then reassigned to this court on February 5, 2013. This court ordered [Dozier] to file a concise statement of matters complained of on appeal consistent with Rule 1925(b).

*Id.* at 1-2 (footnote omitted).

The trial court noted that Dozier's *pro se* Rule 1925(b) statement "Aver[red] eighteen[] nearly incomprehensible points of error made by the trial court." *Id.* at 2. From these eighteen asserted issues, the trial court gleaned only four that it deemed worthy of consideration, reproduced verbatim from Dozier's Rule 1925(b) statement as follows:

1. Relators arrest was unlawful and unconstitutional being absent the mandatory search and arrest warrant particularly describing the place to be searched, and the person or thing to be seized.

2. Relator was denied his constitutional right to face his accuser.

* * * *

7. Trial counsel Ms. Connie Clarke, Esq., for the DEFENDERS ASSOCIATION, violated relators constitutional right to have a trial by jury.

---

2 ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

* * * *

18.    Relator was not sentenced within or by the 60-days time period but was pronounced sentence upon 6-months after conviction.

***Id.*** at 2-3 (quoting verbatim Dozier's Pa.R.A.P. 1925(b) Statement, 6/21/2013, at 1-3).  *Seriatim*, the trial court rejected each of these issues on the merits.

Before this Court, Dozier is more ambitious, raising no fewer than twenty-seven issues.  These twenty-seven issues are grouped into nine denominated sections in his argument, as follows:  (1) Unconstitutional Search and Seizure; (2) Arrested Without ***Miranda***[3] Warning; (3) Statements Without ***Miranda*** Warning Inside the Interrogation Room; (4) Speedy Trial Violation; (5) The Right to Face Your Accuser; (6) Delayed Sentence Violation; (7) Biased Statement of Trial Judge; (8) The Most Important Document (The Sentencing Order); and (9) Corrupt Trial Judge. We will address these issues as they are grouped in Dozier's argument.[4]

_____

[3]    ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

[4]    Despite asking for, and being granted, a motion to extend its deadline for filing a responsive brief in this matter, the Commonwealth failed by a considerable margin to file a brief within the extended time this Court afforded it to do so, unnecessarily delaying the resolution of these proceedings to no one's benefit and to the detriment of Dozier, who is entitled to the expeditious review of the issues that he presents on appeal. Inasmuch as the Commonwealth, when in the posture of an appellee, is not obligated to file such a brief, we urge the Commonwealth to seek extensions for the filing of its brief only when it intends to, and is confident that it has the capacity to, exercise its right to file such a brief on a timely basis.

Before proceeding further, we must assess which of these issues have been preserved in the court below and which have been presented to this Court such that review of their merits is appropriate. Doing so will enable us to winnow Dozier's arguments considerably.

Issues 2 and 3, in which Dozier asserts violations of **Miranda**, as well as issue 4, concerning a purported violation of Dozier's speedy trial rights, and issue 7, which is based upon the trial court's allegedly biased statements, all are waived for failure to present them in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Commonwealth v. Baker**, 24 A.3d 1006, 1034-35 (Pa. Super. 2011).

Preservation of an issue in the trial court and its inclusion in the Rule 1925(b) statement are necessary but not sufficient to preserve the right to appellate review. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). An appellant also must provide this Court with substantive argument, fortified by reference to relevant law, to trigger this Court's reviewing function. Our rules require compliance with the following requirements, *inter alia*:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part – in distinctive type or in type distinctively displayed – the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

Rule 2101 dictates that briefs "shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise, . . . if the defects are in the brief . . . of the appellant and are substantial, the appeal . . . may be quashed or dismissed."  Pa.R.A.P. 2101.  Not infrequently, Pennsylvania courts have deemed violations of Rule 2119(a) sufficiently substantial to require waiver of the issues in question.  *See, e.g., Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009); *Commonwealth v. Brougher*, 978 A.2d 373, 376 (Pa. Super. 2009).  Moreover, mere recitation of boilerplate law followed by conclusory assertions of error typically does not suffice to ripen an issue for our review.  *See Commonwealth v. Murchinson*, 899 A.2d 1159, 1162 (Pa. Super. 2006).

These principles standing alone compel us to deem waived several other categories of issues set forth by Dozier.  First, issue 5, concerning an alleged violation of Dozier's right to face his accuser is waived upon this basis.  Although Dozier provides boilerplate citations regarding the federal and state constitutional right of confrontation, Brief for Dozier at 25-26, including references to Roman Governor Festus and President Dwight D.

Eisenhower, he fails to support his particular claim with any on-point case law. Consequently, this issue is waived.[5]

Issue 9, in which Dozier challenges his conviction upon the basis that the presiding judge at his trial, Judge Berry, was corrupt, *see* Brief for Dozier at 37-38, also is waived. In support of this claim, Dozier cites periodical articles that we may not consider, because they are not included in the certified record. *See Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa. Super. 2006). As well, he cites our decision in *Commonwealth v. Cain*, 29 A.3d 3 (Pa. Super. 2011). In that case, we acknowledged that disciplinary action had been taken, and a criminal investigation conducted, against Judge Berry for improper business practices, which ultimately led Judge Berry to recuse himself from hearing criminal matters at the request of the Philadelphia County District Attorney's Office. *Id.* at 8 & n.6. Because the appellant alleged that Judge Berry had drawn attention for these practices as early as April 2007, before the appellant had been tried,

---

[5] In short, Dozier argues that he was denied the opportunity to face his accuser, whom he identifies as Jaroslaw Krajewski, a representative of the Philadelphia District Attorney's Office. Krajewski was the affiant on the criminal complaint filed against Dozier, and, as Dozier underscores, on the complaint Krajewski attests that he "accuse[s] Maurice L. Dozier" of the various crimes at issue in this case. *See* Brief for Dozier at 25. We are aware of no law to the effect that the law enforcement affiant who swears out a criminal complaint is the "accuser" for constitutional purposes. Under these circumstances, it is plain that the relevant "accuser" was the victim, A.R. Dozier does not contend that he was denied the opportunity to confront A.R.

we acknowledged the potential validity of appellant's assertions that Judge Berry's impartiality in matters involving the Commonwealth fairly could have been questioned. Accordingly, we remanded for fact-finding to determine when, relative to Cain's trial, the trial judge had discovered the Commonwealth's investigation into the judge's business dealings. *Id.* at 8-9. In this case, however, Dozier was tried years before any of the allegations against Judge Berry came to light, and, most importantly, before any criminal investigation was opened. Hence, the fears of partiality animating our decision in *Cain* were not in play; there was no reason at the time of Dozier's trial to question Judge Berry's impartiality in criminal matters. Having cited no other cases in support of his argument, Dozier's argument essentially consists of bald allegations of partiality during a time period when Dozier can demonstrate no basis for such allegations. Accordingly, this issue, too, is waived.

This leaves for our consideration issues 1, 6, and 8. Issue 1 is styled a challenge to the propriety of the seizure and putative search of Dozier by the Philadelphia police shortly after Dozier assaulted A.R. First, we may dispense with Dozier's challenge to any search. In his lengthy, disjointed argument, at no time does Dozier assert that anything inculpating was retrieved from his person during his seizure, or that anything so retrieved was introduced against him at trial. Consequently, this issue, being entirely abstract and tied to nothing pertinent to Dozier's conviction, is not reviewable.

As to the lawfulness of Dozier's initial arrest, Dozier seems to argue that he could not have been seized, let alone arrested, without a warrant. He presents this as an unqualified proposition of law, which is patently false. In point of fact, "law enforcement authorities must have a warrant to arrest an individual in a public place **unless they have probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon**." *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999) (emphasis added).[6]

In *Commonwealth v. Sabb*, 409 A.2d 437 (Pa. Super. 1979), to cite only one of myriad cases that we might, we found that the police had probable cause to arrest a rape suspect when the victim, who did not know her assailant before the time of the crime, identified him by his approximate size, clothing, accessories, and facial hair. The police found the suspect a half-hour after the assault, three and one-half blocks from the scene of the crime. He matched the description provided by the victim except for the fact that he wore a hat that the victim had not mentioned, and his glasses were of a different style than the victim had described. We found that the victim's

---

[6] Dozier acknowledges but misstates this principle when he asserts that "A law enforcement officer . . . can only make a warrantless search and[/]or arrest upon probable cause of a 'Felony' or 'Misdemeanor' when a crime is being, or about to be committed in the 'presence' of the officer, (meaning in his eye sight [*sic*])." Brief for Dozier at 15. While this statement is more or less true with regard to misdemeanors, *see Clark*, 735 A.2d at 1251, it is simply false with regard to felonies.

description and the circumstances when the assailant was discovered established probable cause to arrest the attacker without a warrant. *Id.* at 440-41.

In the case at bar, the evidence at trial established that the police arrived shortly after Dozier left A.R.'s apartment, where she immediately identified Dozier, whom she had known since childhood, as her assailant. Her neighbor informed police that Dozier was on the street in the neighborhood, and also provided officers with Dozier's address. Dozier was found in the street in the victim's immediate neighborhood, and, shortly thereafter, A.R. identified Dozier in person as her assailant.

In *Sabb*, we supported our determination that the police had probable cause to arrest the assailant in that case by citing five cases in which our Supreme Court or we had reached the same conclusion under similar circumstances – *i.e.*, that the police had probable cause to arrest suspects based solely upon a victim's detailed description and other circumstantial considerations. *Id.* at 441. We would struggle to find a more detailed description of an assailant than an immediate identification by name by a victim who knew the suspect for many years preceding the assault. Thus, Dozier's argument that he was arrested without probable cause – which is

devoid of any citations to on-point case law in which a court that binds us ruled in his favor – is unavailing.[7]

In issue 6, Dozier contends that the trial court improperly delayed sentencing to such an extent that he should be granted discharge. We note at the outset that Dozier erroneously cites former Pa.R.Crim.P. 1405 for the governing time period, when, in fact, Rule 704, Rule 1405's successor rule, applied at the time of Dozier's conviction and sentencing.[8] This is relevant inasmuch as the distinction adds thirty days to the time period that the trial court had under the rule to enter its judgment of sentence. While Rule 1405 afforded trial courts sixty days to impose sentence, Rule 704 provides that sentence "shall ordinarily be imposed within 90 days of conviction." Pa.R.Crim.P. 704(A)(1). This time period may be extended by at least thirty days, and perhaps sixty days, when the trial court remands the defendant for purposes of a psychiatric or psychological examination, as occurred in

_____

[7]    As well, Dozier does not direct us to where in the record he challenged his arrest before or during his trial, as required by Pa.R.A.P. 2117(c) ("[W]here under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify" when and how the issue was raised and how the lower court disposed of it.). Our review of the certified record does not indicate that this was the subject of any pre-trial motion or an objection at trial. Consequently, even if this issue had a modicum of merit, we might find in the alternative that it is waived. *See* Pa.R.A.P. 302(a) (precluding appellate review of issues not raised in the first instance in the trial court).

[8]    Rule 704 was amended and renumbered (from 1405) on March 1, 2000, and took effect on April 1, 2001. Dozier was tried and convicted on July 11, 2002.

this case. ***Compare*** Pa.R.Crim.P. 704, cmt. ("Under paragraph (A)(1), sentence should be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*, unless the court orders a psychiatric or psychological examination pursuant to Rule 702(B). Such an order should extend the time for sentencing for only as much time as is reasonably required, but in no event should sentencing be extended for more than **30 days** beyond the original 90-day limit." (emphasis added)) ***with*** Pa.R.C.P. 702(B) ("[T]he sentencing judge may . . . order the defendant to undergo a psychiatric or psychological examination. For this purpose the defendant may be remanded to any available clinic, hospital, institution, or state correctional diagnostic and classification center for a period not exceeding **60 days.**" (emphasis added)).

The above-compared rules and comment leave a degree of uncertainty as to the duration of the applicable time limit under the circumstances of this case, wherein the trial court ordered a psychological assessment in advance of sentencing. In effect, relying upon the inapplicable sixty-day time limit provided by repealed Rule 1405 and the thirty-day limit that Dozier maintains applies under Rule 702 (a proposition that arguably is true only if the comment to Rule 704 trumps the text of Rule 702), questions inhere as to whether the rules called for Dozier to be sentenced within ninety days (under Rules 1405 and 702), 120 days (under Rules 702, 704, and the comment to Rule 704), or 150 days (under the plain text of Rules 702 and 704 standing alone).

We may reject Dozier's ninety-day argument because, as noted, Rule 1405 provided for thirty fewer days than successor Rule 704, which plainly applies to this case. *Arguendo*, then, we will give Dozier the benefit of his best-case scenario under the applicable Rules 702 and 704, which would have required the trial court to sentence Dozier within 120 days, absent good cause shown. As noted, Dozier was convicted on July 11, 2002. He was sentenced on December 12, 2002. Thus, it appears that Dozier was sentenced 154 days after he was convicted, approximately thirty-four days later than he should have been under Rules 702 and 704.[9] Upon this basis, Dozier seeks discharge.

In **Commonwealth v. Glass**, 586 A.2d 369 (Pa. 1991), our Supreme Court explained that questions regarding delays in sentencing should be analyzed under the same standard that applies to alleged speedy trial violations:

> This Court has firmly established a framework for analysis of cases where delays in sentencing have implicated rights to a speedy trial under the Sixth Amendment and under Article I, § 9 of the Pennsylvania Constitution. **Commonwealth v. Glover**, 458 A.2d 935 (Pa. 1983); **Commonwealth v. Pounds**, 417 A.2d 597, 599 (Pa. 1980). The factors to be considered in such cases were described as follows in **Glover**, 458 A.2d at 937:

---

[9] Dozier's math differs slightly: He contends that he was sentenced 151 days after his was convicted. **See** Brief for Dozier at 28. The distinction is immaterial.

- 14 -

> In determining whether a defendant's constitutional speedy trial right has been violated, it must first be determined whether the delay itself is sufficient to trigger further inquiry. **Barker v. Wingo**, 407 U.S. 514 (1972); **Jones v. Commonwealth**, 434 A.2d 1197 (Pa. 1981). If the delay is sufficient to trigger further inquiry, the reviewing court must balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial. **Barker**, *supra*; **Pounds**, *supra*.

**Glass**, 586 A.2d at 371-72 (citations modified). Thus, merely establishing that more time separated conviction and sentencing than the rules intended does not necessitate discharge. Rather, discharge is called for only when the delay in question causes the defendant prejudice. **Commonwealth v. Anders**, 725 A.2d 170, 173 (Pa. 1999) ("[W]e hold that a defendant who is sentenced in violation of Rule 1405 is entitled to a discharge **only where the defendant can demonstrate that the delay in sentencing prejudiced him or her**." (emphasis added)). "The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation." **Id.**

Assessing this case in light of the above factors, it is clear that Dozier is not entitled to discharge. First, the delay, at most, amounted to just over thirty days. Relative to the brutality of his crime, the need for a psychological evaluation, and the utter improbability of him receiving a sentence not measured in decades, an extra thirty days in advance of sentencing, roughly twenty-five percent longer than the prescribed limit and a period for which he was credited with time served, cannot be said to be so

- 15 -

prejudicial as to require discharge.  Second, Dozier has not even attempted to inform us as to whether, when, and how he objected to this delay, if at all.  More generally, Dozier has in no way stated or implied how the modest delay at issue in any way imposed upon his due process or speedy trial rights, or otherwise prejudiced him, in light of the fourteen and one-half to twenty-nine-year sentence that the trial court ultimately imposed.  Inasmuch as the existence of prejudice is a *sine qua non* to an award of relief for a violation of Rules 702 and 704, and Dozier has made no showing of prejudice, he is not entitled to relief on this issue.

Dozier's last duly preserved issue, which also is the subject of a "Motion to Discharge for Lack of A Sentenc[ing] Order" that was filed by Dozier during the pendency of this appeal, pertains to the alleged illegality of his detention due to the fact that the trial court did not enter a written order reflecting Dozier's judgment of sentence.  The precise legal basis asserted is difficult to resolve into something warranting meaningful discussion.  Aside from Dozier's citation of various cases generally regarding a trial court's sentencing authority, he appears to seek relief for a putative violation of 42 Pa.C.S. § 9764(b)(5), which requires a sentencing court to provide a county correctional facility various items, including "[a] written, sealed sentencing order from the county," within ten days of the entry of a

judgment of sentence.[10] His argument evidently rests upon the assumption that, because his numerous requests for criminal justice agencies to provide him with a copy of his sentencing order have been rebuffed,[11] such a sentencing order must not exist and, therefore, he is being held illegally.

We need not review the necessity of a written sentencing order to reject this argument. Regardless of whether Dozier was unable to procure a copy of his sentencing order from various individuals and agencies, our review confirms that the certified record contains a sentencing order reflecting precisely the judgment of sentence recited at the outset of this opinion. Because the categorical nonexistence of such an order appears to be the linchpin of Dozier's argument, it necessarily fails. Moreover, this Court recently has held that it matters not whether the sentencing order is in the possession of any administrative or judicial body other than the certified record retained by the court of common pleas. *See Joseph v. Glunt*, ___ A.3d ___, 899 WDA 2013, 2014 WL 2155396, at *6 (Pa. Super. May 23, 2014). As in *Joseph*, the certified record in this case confirms and

_____

[10] Although Dozier's "Motion to Discharge for Lack of a Sentence Order," which was filed during the pendency of this appeal, refers to section 9764, his otherwise very similar argument on this topic in his brief relies exclusively upon a litany of cases of dubious relevance to this case. *See* Brief for Dozier at 33-37.

[11] Dozier documents his efforts to obtain his sentencing order by attaching to his motion voluminous correspondence between him and various individuals and agencies, in which said individuals and agencies denied that such an order was in their possession.

documents Dozier's judgment of sentence. Thus, this argument can provide no relief from Dozier's judgment of sentence. For the same reasons, Dozier's motion to discharge also must be denied.

Judgment of sentence affirmed. "Motion to Discharge for Lack of a Sentence Order" denied.

Shogan, J. concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2014