J-A08041-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
    :         PENNSYLVANIA
           Appellee     :
    :
           v.     :
    :
ERIK ALEXANDER CLARK,     :
    :
           Appellant     :     No. 913 MDA 2014

Appeal from the Judgment of Sentence Entered April 29, 2014
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0002682-2013

BEFORE:     SHOGAN, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:         **FILED MAY 29, 2015**

Erik Alexander Clark (Appellant) appeals from the judgment of

sentence entered following his convictions for robbery and receiving stolen

property. We affirm.

The trial court set forth the relevant factual history of this case as

follows.

> On October 27, 2011, three black males entered the Fulton
> Bank at 3183 Susquehanna Trail, Manchester Township in York
> County around 11:20 a.m. All three males appeared to be armed
> with guns. Two of the men approached the counter and
> demanded money from the bank tellers. The third male acted as
> a lookout for the other two and stood watching the entrance/exit
> to the bank. The men wore bandanas over their faces to conceal
> their identit[ies], and one of the men demanding the money
> carried an orange bag. After getting the money, the three black
> males fled the bank and jumped into a vehicle traveling down
> Susquehanna Trail. Witnesses identified this vehicle as a gold
> Dodge with Maryland license plate 5AK6030. These witnesses
> also observed the vehicle flashing its lights, and the driver
> picking up three masked individuals running away from the

*Retired Senior Judge assigned to the Superior Court.

Fulton Bank. Police ran this tag and found that the car was registered to Wendy Melissa Brown Clark. Wendy Clark is [Appellant's] mother.

Around 1:00 p.m. on the same day as the bank robbery, Officer Michael Davis of the York City Police Department discovered the suspect vehicle being towed on Market Street. Officer Davis pulled over the tow truck and discovered that the vehicle was being taken to InTown Motors. The vehicle had been towed from 581 West Clarke Avenue in York city. Officer Davis contacted Northern Regional, and Northern Regional Police Department took custody of the vehicle.

Later that day, Chris Ness, the owner of the property from which the suspect vehicle was towed, was contacted by a male seeking to find his vehicle. Mr. Ness directed him to InTown Motors and also contacted police. The same individual made contact with InTown Motors inquiring about the vehicle, and InTown Motors informed police that a man was coming to pick up the suspect vehicle. Officer Davis responded to InTown Motors and hid in the shop area until the man arrived. Once the man arrived and inquired about the suspect vehicle, Officer Davis took him into custody. The man was identified as [Appellant].

After taking [Appellant] into custody, he was searched. Officer Anderson testified that he found car keys to the suspect vehicle, a Maryland drivers license, a wallet, and a thick wad of cash with a rubber band wrapped around it. When counted, the wad of cash totaled $1,291.00, which Officer Anderson calculated to be almost exactly one-fourth of the amount taken from Fulton Bank. Officer Anderson also interviewed [Appellant] after taking him into custody. [Appellant] denied all involvement in the bank robbery and denied that his vehicle was at the Fulton Bank. [Appellant] also stated that he had his vehicle all morning and that no one else had used his vehicle.

Corporal Jack Asper testified that he conducted the search of the suspect vehicle. A search warrant for the vehicle was obtained regarding the robbery investigation before any search was conducted. The search was conducted 4 to 5 hours after the robbery occurred. Corporal Asper found the missing front license plate in the trunk of the vehicle. Maryland law requires a plate

- 2 -

on both the front and back of the vehicle. An orange, nylon bag was also located inside the vehicle, which seemed to match the description of what the armed robbers were carrying. Corporal Asper noted that the nylon bag was soaking wet; however, the interior of the vehicle was completely dry. He also noted it was rainy and wet all day, including the time of the robbery. Finally, Corporal Asper found five ends of marijuana cigarettes in the vehicle's ashtray.

On June 19, 2012, [Appellant] entered a plea of guilty to possession of a small amount of marijuana under 35 P.S. § 780-113(a)(31). On November 19, 2012, Officer Anderson filed formal charges against [Appellant] for the robbery of Fulton Bank.

Trial Court Opinion, 9/3/2014, at 2-4.

On May 31, 2013, Appellant filed an omnibus pre-trial motion seeking to suppress the items found during his search incident to arrest and to dismiss his case under the compulsory joinder rule. That motion was denied, following a hearing, on September 10, 2013. On March 10, 2014, the morning of trial, Appellant filed a motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600, which was denied following a pre-trial hearing. The matter proceeded to a jury trial. On March 13, 2014, Appellant was convicted of the aforementioned charges. On March 27, 2014, Appellant was sentenced to an aggregate term of 3 to 6 years' incarceration. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises three issues on appeal.

1. Whether the trial court erred in denying Appellant's motion to suppress challenging his arrest and [the] search incident to that arrest?

2. Whether the trial court erred in denying Appellant's motion to dismiss pursuant to 18 Pa.C.S.[] §110?

3. Whether the trial court erred in denying Appellant's motion to dismiss pursuant to Rule 600?

Appellant's Brief at 4.

In his first question, Appellant argues that the trial court erred in denying the portion of his omnibus pretrial motion in which he sought to suppress evidence recovered following his arrest. Appellant's Brief at 12-14. Specifically, Appellant contends that he was arrested without probable cause; therefore, all evidence recovered after his illegal arrest should be suppressed. *Id.*

We have discussed our review of suppression claims as follows:

When considering the denial of a suppression motion, this Court's review is limited to determining whether the [suppression] court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

*Commonwealth v. West*, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

At the suppression hearing, Appellant, through counsel, stipulated to the following facts.

> On October 27th, 2011, Sergeant Anderson with the Northern York County Regional Police Department responded to 3183 Susquehanna Trail Fulton Bank for report of an armed robbery. [W]itness Cheryl Hoke, reported seeing three black males fleeing the bank getting into a gold Dodge with the license number 5AK6030 and identified the driver as possibly being female. Surveillance video showed three black males committing the robbery. Sergeant Anderson placed a general alert on the vehicle.
>
> [A]t approximately 1300 hours, Officer Davis with the York City Police Department observed the suspect vehicle with a matching tag number being towed in the area of East Market Street in York City and stopped the tow truck with the vehicle in that area. [T]he tow truck driver advised that the vehicle had been towed from 581 West Clark Avenue at the request of property owner Chris Ness where the vehicle was illegally parked with the front license plate removed.
>
> []Officer Anderson responded to the scene of the tow truck vehicle stop and impounded the vehicle taking it to the Northern Regional Police Department. Sergeant Anderson then responded to 581 West Clark Avenue where he made contact with David Tauser who informed him that the vehicle had been found parked in front of his garage when Tauser came to work at approximately 1200 hours. At 1428 hours Chris Ness, the property owner at 581 West Clark Avenue, contacted the York City Police Department to inform them that a subject had called to claim the vehicle and that that subject was in route to [In]Town Motors. Based upon this information, Officer Davis with the York City Police Department, responded to [In]Town Motors where [Appellant] was found to be present and claiming the vehicle. Officer Davis took [Appellant] into custody[.]

N.T., 7/2/2013, at 7-9 (reformatted into paragraphs).

Following the hearing and after consideration of the parties' briefs, the trial court denied Appellant's motion, holding as follows.

- 5 -

[T]he police had probable cause to take [Appellant] into custody at InTown Motors after [Appellant] arrived to retrieve his vehicle. The [c]ourt must consider the facts and circumstances known by [Sergeant] Anderson at the time [Appellant] was placed in custody. First, [Sergeant] Anderson knew that a bank robbery occurred at Fulton Bank, and he had surveillance footage of the incident taking place. Second, he gathered that three black males entered the bank and one suspect drove the getaway vehicle. Third, eyewitnesses informed [Sergeant] Anderson of the make, model, color and license plate number of the getaway vehicle. Lastly, when this vehicle was later found by the police and taken to InTown Motors, it was [Appellant] who inquired and arrived at InTown Motors to pick up the vehicle. This fact alone links [Appellant] to the getaway vehicle used in the armed robbery. All these facts taken together warrant a person of reasonable caution to believe that [Appellant] participated in the robbery of the Fulton Bank.

Trial Court Opinion, 9/3/2014, at 5-6.

We evaluate the trial court's reasoning mindful of the following.

It is well-established that there are three categories of interaction between citizens and police officers. As our Supreme Court has clearly articulated:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ranson*, 103 A.3d 73, 76-77 (Pa. Super. 2014) (citations omitted). In point of fact, "law enforcement authorities must have a warrant to arrest an individual in a public place **unless they have**

**probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon.**" ***Commonwealth v. Dozier***, 99 A.3d 106, 112 (Pa. Super. 2014) (emphasis in original).

The facts to which Appellant stipulated, when viewed in the light most favorable to the Commonwealth, reveal that Sergeant Anderson and Officer Davis had probable cause to believe that the individual inquiring about the suspect vehicle was involved in the robbery that had occurred earlier that day. Accordingly, the arrest and the search incident to that arrest were justified. ***See e.g. Commonwealth v. Powers***, 398 A.2d 1013 (Pa. 1979) (holding that the police had probable cause to arrest three men who were in the general area and fit the description of suspects in an assault that had occurred 15 minutes before); ***Commonwealth v. Saab***, 409 A.2d 437 (Pa. Super. 1979) (holding that there was probable cause to arrest the defendant a half-hour after the crime occurred and three and one-half blocks from the scene, based on the victim's general description). Thus, applying the above standards, we discern no error in the trial court's decision to deny Appellant's motion to suppress.

In Appellant's second issue, he contends that the trial court erred in denying his motion to dismiss brought pursuant to 18 Pa.C.S. § 110. Appellant's Brief at 14-17. Specifically, Appellant argues that, because he was charged separately with, and pled guilty to, possession of the marijuana recovered during the search incident to his arrest on the date of the robbery,

his criminal liability for his actions that day had been decided and the district attorney was precluded from trying him for the robbery under Section 110.

*Id.*

It is well-established that

Section 110 of the Pennsylvania Rules of Criminal Procedure governs when a prosecution is barred by a former prosecution for a different offense, and thus serves as a statutory enforcement mechanism for protecting a defendant's Double Jeopardy rights in Pennsylvania's criminal courts. In *Commonwealth v. Pries*, 861 A.2d 951 (Pa. Super. 2004), we held that:

> the compulsory joinder rule, set forth at [18 Pa.C.S. § 110], bars a subsequent prosecution if all prongs of the following test are met:
>
> (1) the former prosecution resulted in an acquittal or conviction [as defined by 18 Pa.C.S. § 109] ; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges were within the same judicial district as the former prosecution.

*Commonwealth v. Miskovitch*, 64 A.3d 672, 686 (Pa. Super. 2013). When dealing with an issue arising under section 110, our scope of review is plenary. *See Commonwealth v. M.D.P.*, 831 A.2d 714, 717 (Pa. Super. 2003).

It is undisputed that Appellant's drug possession charges ended in a conviction.  At issue here is whether the robbery was based upon the same criminal episode as the drug possession.  As both parties and the trial court

point out, the facts of this case are similar to those presented to this Court in **Commonwealth v. Lane**, 658 A.2d 1353 (Pa. Super. 1995). The victim in **Lane**, Anthony Whiting, was robbed at gunpoint in April of 1992. **Id.** at 1354. Approximately four months later, Whiting identified Lane as one of his attackers. **Id.** Lane was arrested and, following a search incident to that arrest, was discovered to be in possession of crack cocaine, cash, and a gold chain belonging to Whiting. **Id.** Lane was charged with the April robbery and with drug possession at separate criminal indictments. **Id.** The Commonwealth did not move to consolidate the charges. Lane was ultimately acquitted of the robbery and subsequently moved to dismiss the drug possession charges under Section 110. **Id.** The trial court granted Lane's motion. This Court reversed the trial court's order dismissing the drug possession charges, reasoning that "the robbery and the drug charges were not temporally or logically related, nor did they have common issues of law or fact. The only similarity was that [Lane] was arrested for the crimes at the same time and [Lane] coincidentally possessed one of the robbery items at the time of the arrest." **Id.** at 1357.

Appellant herein argues that **Lane** is distinguishable, primarily because of the four-month time frame between the robbery and Lane's arrest. Appellant's Brief at 15-17. Appellant contends that the six-hour difference between the robbery and his arrest creates a temporal, logical, and factual correlation between the two crimes. **Id.** at 16. We disagree.

> Several factors are considered when determining whether a number of criminal charges arose from a single criminal episode: (1) the temporal sequence of events; (2) the logical relationship between the acts; and (3) whether they share common issues of law and fact. Two separate offenses may constitute the same criminal episode if one offense is a necessary step in the accomplishment of a given criminal objective or if additional offenses occur because of an attempt to secure the benefit of a previous offense or conceal its commission.

*Lane*, 658 A.2d at 1355 (quotations and citations omitted).

"Robbery and possession of a controlled substance are not the same criminal act." *Id.* at 1356. As in *Lane*, the two crimes at issue here do not share common issues of law or fact such that Section 110 would bar prosecution of the robbery. Moreover, Appellant has failed to convince us that the temporal relationship between the robbery and the drug possession is anything but coincidental. Regardless of how much time elapsed between the burglary and Appellant's arrest, "[t]he two offenses [are] not part of the same criminal episode simply because evidence pertinent to both cases was found during the same search." *Id.* at 1357. Accordingly, we find no error in the trial court's denial of Appellant's motion to dismiss under Section 110. *See also Commonwealth v. Stewart*, 465 A.2d 161 (Pa. Super. 1984) (holding that Section 110 did not bar prosecution for drug possession offense filed after Stewart's arrest for theft, stating "there is no basis in the evidence here presented for finding that [Stewart's] possession of controlled

substances commenced at the time of the theft or at the time when appellant came into possession of the stolen property.").

In his final issue, Appellant challenges the trial court's denial of his motion to dismiss under the "speedy trial rule," Pa.R.Crim.P. 600.[1] Appellant's Brief at 17-19.

---

[1] Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

> **Rule 600. Prompt Trial**
>
> (A) Commencement of Trial; Time for Trial
>
> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.
>
> (2) Trial shall commence within the following time periods.
>
>> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
>
> * * *
>
> (C) Computation of Time
>
>> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*). Further, we note:

> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> **So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime**.

***Id.*** at 1238-39 (internal citations and quotation marks omitted) (emphasis added).

Instantly, for Rule 600(A)(2) purposes, the Commonwealth was required to bring Appellant to trial on or before November 19, 2013. Appellant was ultimately tried on March 10, 2014. Thus, a total of 477 days elapsed from the time the complaint was filed until the date of trial. While he concedes the 102 days between the filing of his omnibus pre-trial motion

and the trial court's denial of that motion constitute excludable time, Appellant maintains that the Commonwealth did not exercise due diligence at various points during the remaining 375 days, resulting in a violation of Rule 600. Appellant's Brief at 18-19.

Appellant takes issue specifically with the nine days that elapsed between the filing of the criminal complaint and Appellant's arraignment on November 28, 2012, and the six days between the issuance of a bench warrant for Appellant on September 13, 2013, and the subsequent return of that warrant on September 19, 2013. *Id.* Finally, Appellant disputes the Commonwealth's contention that the unavailability of his co-defendant rendered certain time excludable. *Id.*

> The Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time, and the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort. We must therefore determine whether the aforesaid violation occurred because of the Commonwealth's failure to exercise due diligence in bringing Appellant's case to trial, or whether it was the result of factors beyond the Commonwealth's control, despite its exercise of due diligence.

*Commonwealth v. Colon*, 87 A.3d 352, 359 (Pa. Super. 2014) (citations and quotations omitted).

With respect to the nine-day delay outlined above, the Commonwealth argued at the Rule 600 hearing that such time was excludable because the

- 13 -

Commonwealth proceeded with due diligence in extraditing Appellant, a resident of Maryland, following the issuance of the criminal complaint and arrest warrant. N.T., 310/2014, at 15-16. The trial court agreed. *Id.* at 19, 20-21. We discern no error in the trial court's assessment. *See* Pa.R.Crim.P. Comment ("For purposes of paragraph (C)(1) and paragraph (C)(2), the following periods of time, that were previously enumerated in the text of former Rule 600(C), are examples of periods of delay caused by the defendant. . . . In addition to any other circumstances precluding the availability of the defendant or the defendant's attorney, the defendant should be deemed unavailable for the period of time during which the defendant contested extradition, or a responding jurisdiction delayed or refused to grant extradition[.]").

The record reflects that Appellant was present in Maryland at the time the complaint was filed. An arrest warrant was issued, and Appellant was extradited to York County the following week.[2] We disagree with Appellant's claim that the Commonwealth failed to exercise due diligence in returning Appellant to Pennsylvania. Accordingly, we find no error in the trial court's determination that those nine days constituted excludable time.

Further, we agree with the trial court's assessment that the six-day delay following the issuance of a bench warrant for Appellant due to his bail

---

[2] This Court notes that Appellant's arrest warrant was issued the day before Thanksgiving.

- 14 -

violations was not attributable to the Commonwealth's lack of due diligence. N.T., 3/10/2014, at 14. *See Commonwealth v. Gorham*, 491 A.2d 1368 (Pa. Super. 1985) (holding that delay following defendant's violation of the conditions of his bail was not attributable to the Commonwealth).

Finally, we reject Appellant's argument that the time his joined co-defendant was unavailable for trial was not excludable under the Rule. *See Commonwealth v. Kimbrough*, 872 A.2d 1244 (Pa. Super. 2005) (holding that delay caused by joined co-defendant is not attributable to the Commonwealth when separate trials would have required the duplication of testimony and evidence, and would have imposed the burden of two lengthy trials on the trial court). Although Appellant argues that the cases were eventually severed, at the time of the delay the parties were properly joined, thus any delay caused by the joined co-defendant's absence from the jurisdiction is not attributable to the Commonwealth.

Computing the time as required by Rule 600(C)(1) reveals that the Commonwealth brought Appellant to trial within 365 days. Accordingly, we discern no error in the trial court's denial of Appellant's Rule 600 motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>5/29/2015</u>