J-S73034-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE LUIS OLIVO, | : | |
| | : | |
| Appellant | : | No. 556 MDA 2017 |

Appeal from the Judgment of Sentence October 26, 2016
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004662-20126

BEFORE:  OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 04, 2018**

Jose Luis Olivo (Appellant) appeals from the judgment of sentence entered October 26, 2016, after he was found guilty of rape by forcible compulsion, rape of a child, involuntary deviate sexual intercourse (IDSI) by forcible compulsion, IDSI with a child, indecent assault, endangering the welfare of children, indecent exposure, and corruption of minors.   We affirm.

As we write for the parties, we need not set forth a detailed recitation of the factual history herein.  Pertinent to this appeal, on February 17, 2012, S.C., who was seven years old at the time, disclosed to her grandmother that she was being sexually abused by her mother's boyfriend, Appellant.  "While this report dealt with a specific incident that allegedly took place on February 14, 2012, S.C. explained at trial how that incident was part of an ongoing pattern of sexual contact that had lasted several years and had occurred in

* Retired Senior Judge assigned to the Superior Court

several locations." ***Id.*** at 1. As a result of this disclosure and subsequent investigation, Appellant was charged with the aforementioned crimes.

Following a jury trial, Appellant was convicted of all eight charged crimes and was sentenced by the trial court to an aggregate term of 20½ to 60 years' incarceration, followed by 17 years' probation. Appellant filed a post-sentence motion on November 14, 2016, claiming, *inter alia,* that the verdict was against the weight of the evidence and requesting the trial court to reconsider his sentence. On March 7, 2017, following a hearing, the trial court denied Appellant's motion. This timely-filed appeal followed, wherein Appellant presents the following issues for our review.[1]

1. Whether the trial court erred in denying Appellant's post sentence motion challenging the weight of the evidence as the testimony established that [S.C] did not disclose any penetration of her genitals to the initial responding officer, [S.C's] mother who filed a [protection from abuse (PFA)] on behalf of [S.C.], or to CYS during their initial interview?

2. Whether the sentence imposed was manifestly excessive, unreasonable and inconsistent with the provisions of the sentencing guidelines and insufficient reasons appear on the record supporting consecutive sentences for rape by forcible compulsion and rape of a child when the criminal act was one in [*sic*] the same for both charges?

Appellant's Brief 5 (suggested answers and unnecessary capitalization omitted).

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

We begin our review of Appellant's weight-of-the-evidence argument by setting forth our standard of review.

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. … Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

*Commonwealth v. Chamberlain,* 30 A.3d 381, 396 (Pa. 2011) (citations omitted).

> A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. We also observe that [i]n criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence.

*Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (quotation marks and citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting *Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011)).

In support of his claim, Appellant asserts that S.C.'s testimony "was fraught with lies, half-truths, and fabrications, and motivated by S.C.'s mother[.]" Appellant's Brief at 17. Appellant claims that, with the assistance

of her mother, S.C. "falsely added details to the original complaint in an effort to bolster the credibility" of S.C. *Id.* at 19. Specifically, Appellant notes that neither the statement given to the responding police officer and CYS nor the allegations contained in the PFA filed by mother on S.C.'s behalf contain an allegation of forcible penetration, which S.C. later testified to at trial and recounted to numerous individuals involved in the investigation. *Id.* at 14.

The trial court responded to Appellant's claim as follows.

[Appellant] essentially argues that a seven year-old child should have incorporated a particular legal term of art into the description of years of sexual abuse she gave to every interviewer. This meritless argument is absurd. In sum, the mere fact that a child victim did not mouth talismanic magic legal terms during certain interviews but effectively did so during others fails to convince me that [Appellant] did not penetrate S.C.'s vagina with his penis just as this line of argument failed to convince the jury at trial.

Indeed, the jury evaluated S.C.'s testimony, including the capable cross-examination by [Appellant's] trial attorney, during which S.C. presented substantial evidence that [Appellant] had "penetrated" her vagina with his penis. Specifically, S.C. testified that, during the February 14, 2012 incident, [Appellant] had "pulled his pants down and got[ten] on top of her and stuck ... his penis a little inside of her." Moreover, S.C. told the examining nurse during the February 20, 2012 examination at Reading Hospital, that [Appellant] had, among other things, "exposed himself to her," "kissed her" and had "used force" to have "vaginal contact . .. with [his] penis." Critically, on cross-examination, S.C. clarified that [Appellant] would insert his penis "all the way in" to her vagina, adding that she would ask [Appellant] to stop but that he would only stop when S.C.'s mother's car appeared on the cameras. Such testimony, standing alone, would support the jury's conclusion that [Appellant] had "penetrated" S.C.'s vagina with his penis.

However, this testimony was supported by additional evidence including, among other things, S.C.'s testimony that the February 14, 2012 incident was part of an ongoing pattern of

- 4 -

abuse that occurred in multiple residences and extended over several years. Moreover, the jury heard about S.C.'s disclosure to her mother as indicated on the PFA Order as well as how S.C. had informed the nurse during the February 20, 2012 examination that [Appellant] would repeatedly kiss and grab S.C. and would pull his pants down in front of her and that, when S.C. would resist, [Appellant] would lay [*sic*] on her and "tr[y] to put his thing in [her]." Furthermore, the jury watched the video of the February 29, 2012 forensic interview and observed the anatomical diagrams used during the interview to clarify what she had meant when she referred to private areas as she described [Appellant's] repeated violation of her body and his position of trust. In addition, S.C. testified that [Appellant] would touch her private part "with his hands and his private part," that her clothes would be taken off, that she could see [Appellant's] private part, that [Appellant] would touch her butt with his private part, would kiss her, and would put his private part in her mouth.

In other words, [Appellant's] contentions are meritless because they are at variance with both the record and common sense. While S.C. may have disclosed years of abuse piecemeal and may not have revealed every detail of [Appellant's] abuse to every individual who questioned her about it, such piecemeal disclosure would not be unexpected of a child like S.C. who had endured years of traumatic sexual abuse by [Appellant]. Moreover, [Appellant's] reliance on the description of [Appellant's] conduct contained in the PFA is misplaced. Indeed, the PFA noted that [Appellant] had "pulled his pants down and got[ten] on top of her and . .. stuck . . . his penis a little inside of her." Such a description fits the definition of "penetration."

Put simply, [Appellant] continues to recycle the same arguments that failed to convince the jury at trial. [Appellant] has similarly failed to present any evidence that would lead me to disturb their conclusions. While [Appellant] might disagree with the jury's verdicts, there is nothing in the record that even hints that those verdicts were "shocking to the judicial conscience." Therefore [Appellant's] challenge to his convictions as against the weight of the evidence must fail.

Trial Court Opinion, 7/17/2017, at 13-15 (citations omitted).

We discern no abuse of discretion in the trial court's conclusion. As the trial court correctly observed, it is within the province of the jury, sitting as fact-finder, to review the evidence and assess the credibility of the testifying witnesses. **See Commonwealth v. Miller**, 2017 WL 4639576 (Pa. Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact."). Moreover, Appellant's claim that S.C.'s testimony was fabricated is a challenge to the victim's credibility, not the weight of the evidence. **See id.** ("[I]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.") (quotation marks and citation omitted).

Furthermore, as alluded to by the trial court, Appellant questioned testifying witnesses about S.C.'s disclosures and the addition of details regarding penetration that Appellant claims S.C. did not disclose in her original statements. Nonetheless, in light of the verdict, the jury, sitting as finder of fact, found the Commonwealth had met its burden. **See Commonwealth v. Chambers**, 599 A.2d 630, 642 (Pa. 1991) ("Issues of credibility are properly left to the trier of fact for resolution, and the finder of fact is free to believe all, part, or none of the evidence."). No relief is due.

Appellant's final issue challenges the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the
> sentencing judge, and a sentence will not be disturbed on appeal

- 6 -

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

* * *

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)

(some citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that

Appellant preserved the issue by timely filing a motion for reconsideration of

his sentence. Moreover, Appellant has included in his brief a statement pursuant to Pa.R.A.P 2119(f). We now turn to consider whether Appellant has presented substantial questions for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his 2119(f) statement, Appellant argues his sentence "was issued without sufficient reasons being placed on the record and is so disproportionate as to implicate the fundamental norms that underlie the sentencing process." Appellant's Brief at 12-13. Specifically, Appellant contends the trial court's imposition of consecutive sentences for rape by forcible compulsion and rape of a child was "manifestly excessive, unreasonable and inconsistent with the sentencing guidelines[.]" **Id.** at 5. Such a claim raises a substantial question for our review. **See Commonwealth v. Caldwell**, 117 A.3d 763, 769 (Pa. Super. 2015) ("[T]he imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where

the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.") (citations and internal quotation marks omitted).

While Appellant's question presented challenges the reasons, or lack of reasons, set forth by the trial court for imposing consecutive sentences, in his argument section, Appellant focuses on the reasoning set forth by the trial court for imposing a 15-to-20 year sentence for rape of a child. Appellant's Brief at 22. In his brief Appellant cites the following statement by the trial court at sentencing.

> I could tell you that the sentence that I'm about to impose is going to consider, heavily consider, what happened to the victim in this case. She was a young child, and I can't imagine that this has not [a]ffected this young child for the rest of her life based on how young she was at the time and that your client was in a position of trust... and the fact that I think if I give a sentence any less than what I'm about to impose on the defendant, it would give the public the idea that they could potentially do this and receive something that's a lighter sentence.

Appellant's Brief at 22 (citation omitted). Appellant argues that the trial court's reasoning for imposing his sentence amounted to an abuse of discretion. Specifically, Appellant contends that

> [s]ince the trial court relied upon factors that are already considered by the sentencing guidelines, such as the age of the victim, as the crime requires a victim under the age of 13, an abuse of discretion is apparent. Furthermore, although protection of the community is an appropriate factor at sentencing, the notion of "sending a message to the community" by imposing a particular sentence is not a recognizable factor. By making an "example" out of the Appellant, the trial court failed to factor in his rehabilitative needs while incarcerated. Therefore, the trial

court sentence was manifestly excessive, unreasonable and inconsistent with the provisions of the sentencing guidelines.

*Id.* at 22-23.

Here, Appellant fails to make a cognizable argument, or cite any authority to support the contention that the individual nature of the crime and the age of the victim are incorporated as factors that comprise the guidelines. *See Commonwealth v. Wall,* 926 A.2d 957, 967 (Pa. 2007) (holding that "the precise age of the victim, i.e., the fact that the victim was only seven-years-old at the time of the sexual abuse, was not an element of rape or IDSI of a victim less than thirteen years old and could justify an above-guideline sentence. … Additionally, [the defendant] has offered no legitimate basis to presume that individual factors of the case], are subsumed within the sentencing guidelines.").

Furthermore, we note that the trial court ordered and received a pre-sentence report (PSI) prior to sentencing. "[W]here the sentencing judge had the benefit of a PSI, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004). Likewise, we are not persuaded by Appellant's argument that the sentence imposed by the trial court was done so to make an "example" out of him. To the contrary, the record reflects that the trial court cited ample reasoning to support the sentences imposed.

[Appellant,] I want to say I watched this trial and I watched [S.C], and then I watched the video of her interview, the forensic interview that was introduced at trial, and I, you know, what really perturbed me was the fact that you did this over such, such a period of time, that you did this to this young girl over years and at different residences. My recollection of the testimony was that there was a home on Perkiomen Avenue. There was another home in the city where this happened, and then this happened in an apartment or a housing unit above your garage where you work. So there were three different locations where [S.C] testified that you sexually abused her, and, quite frankly, I can tell you that not in this courtroom, but in one across the street, 12 people sat there and listened to this little girl testify, and they obviously believed everything that she said, and it really bothers me that the fact that you tried then to conceal it. This whole -- the testimony about the fact that this [surveillance] video was set up [facing the adjoining alley] so that you could see the mother when the mother would come home, and the girl knew that.

* * *

There was evidence that that's how it was utilized from [S.C.] from what I remember that she testified that [the abuse] would stop when the mother's vehicle would be shown on that [surveillance] video, that the mother was now approaching the house, because my recollection of the testimony was that the mom was at work, and [Appellant] was home, and [S.C.] was in his care.

* * *

[T]hat was the testimony, that this took place over the course of time, and that this took place, and I could tell you that the sentence that I'm about to impose is going to consider, heavily consider, what happened to [S.C] in this case. She was a young child, and can't imagine that this has not [a]ffected this young child for the rest of her life based on how young she was at the time and that [Appellant] was in a position of trust. He essentially was a caretaker when this happened. In addition to that, I have to look out for all of us out there, and, you know, I read the assessment report, and the assessment report while it did find that [Appellant] is a non-violent predator, it did come to the conclusion[,] as the Commonwealth placed on the record[,] that [Appellant] suffers from pedophilia, so there is the possibility that this could happen again[,] that he could reoffend. None of us

- 11 -

ha[s] a crystal ball, but I do have in front of me a report that indicates [*sic*]. So I'm taking in[to] consideration everything that the [Commonwealth and defense counsel] said, taking into consideration the impact that this conduct that I heard during the course of the trial would have had on [S.C], taking into account the impact that this would have on the citizens of this county, and the fact that I think if I give a sentence any less than what I'm about to impose on [Appellant], it would give the public the idea that they could potentially do this and receive something that's a lighter sentence.

* * *

I think that [imposing any other sentence] would really diminimize [*sic*] the testimony that we heard during the course of -- I can't recall at this point -- it was three or four days worth of trial testimony. And again, I really really [*sic*] predominantly am taking into account the extended period of time over which these assaults took place at several different locations was the testimony at the trial, and I think to do anything else would be to diminish the seriousness of what this jury concluded when they heard the testimony and found [Appellant] guilty.

N.T. 10/26/2016, at 21-24.

Accordingly, after a thorough review of the record and briefs, we find

Appellant has presented no issue on appeal which would convince us to disturb

his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018

- 12 -