J-A31043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT W. PALEN | : | |
| | : | No. 3619 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence October 21, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003303-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT W. PALEN | : | |
| | : | No. 3620 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence October 21, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003302-2015

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:             **FILED FEBRUARY 20, 2018**

Appellant, Robert W. Palen, appeals from the judgments of sentence entered in the Court of Common Pleas of Philadelphia County after a jury found him guilty of two counts of rape, two counts of sexual assault, involuntary deviate sexual intercourse, and aggravated assault at the close of his consolidated criminal trial.  Sentenced to an aggregate term of incarceration

_____

* Former Justice specially assigned to the Superior Court.

of 30 to 60 years on the rape and aggravated assault charges, Appellant challenges the sufficiency and weight of the evidence, the discretionary aspects of his sentence, and the court's order denying his motion for change of venue. After careful review, we discern no merit to Appellant's claims, but we are nevertheless compelled to vacate that portion of Appellant's sentence designating him a Sexually Violent Predator (SVP), as the Pennsylvania Superior Court has recently deemed unconstitutional the mechanism for imposition of SVP status used in the present case.

The trial court aptly sets forth the factual and procedural history of the case, which we have arranged in chronological order:

> Sometime around August of 2010, Appellant encountered [the complainant, N.D.,] at a 7-Eleven in Northeast Philadelphia. [N.D.] admittedly was a heroin addict who was engaging in prostitution to support her habit [at the time,] N.T., 4/21/16, at 91[, and she was] solicited by Appellant[, whom she did not know,] and rode with him in his truck to Pennypack Park.
>
> There, Appellant assaulted [N.D.] by punching her in the face and then raping her on the bench in the woods. N.T., at 100-102. Following the assault, Appellant drove off after telling his victim not to follow him. [N.D.] waited until the truck had driven away, exited the park and attempted to call 911 by stopping a passing motorist. N.T., at 104. Although police were alerted and came to the area, [N.D.] left before their arrival, feeling her drug use and prostitution would make her not believable.
>
> ***
>
> [O]n August 3, 2011, at approximately 1:00 a.m., Appellant encountered the complainant, [C.B.], at [the same] 7-Eleven in Northeast Philadelphia…. N.T. 4/20/16, at 59-60. Appellant struck up a conversation with [C.B.] and offered to drive her home in his truck, which she accepted. Instead of driving her home, however, Appellant drove her to Pennypack Park in Philadelphia.

While in the truck, Appellant cursed his victim and punched her in the face causing her to bleed. N.T. at 65. At the park, Appellant dragged his victim by her hair from the truck and into the woods. He pulled her to a bench where, after punching her in the face several more times, he forced her to perform oral sex on him and then raped her on the bench. N.T. at 67-69. After the sexual assault, Appellant struck [C.B.] again and told her "Bitch, do not move," as he ran from the area. N.T. at 72.

[C.B.] retrieved her cell phone and was able to contact 911. Police arrived and took the victim to Episcopal Hospital where she was treated for her injuries and a Rape Kit was done. Her injuries included a nasal fracture and head injuries in addition to the sexual assault trauma. After [C.B.] was treated at the hospital, she was taken next door to the Special Victims Unit. There she was interviewed and shown photographs without success. N.T. at 75-76.

Using the sperm [collected] when a vaginal swab was done as part of the rape kit procedure on [C.B.], a DNA sample was submitted to a national database.

* * *

[On May 15, 2012], while in the process of getting her life together and recovering from her addiction, [N.D.] filed a [police report] concerning her rape. This report . . . was encouraged by her therapist as part of her rehabilitation. N.T. at 106.

* * *

[On March 18, 2014, a] match to the DNA sample [taken from [C.B.]'s vaginal swab] was detected [ ] for Appellant, who was then living in Madison, Wisconsin. The Madison Police Department, pursuant to a search warrant, obtained oral swabs from Appellant and forwarded them to the Philadelphia Special Victims Unit. N.T. at 4-5. Testing of the oral swabs received from the Wisconsin authorities established that Appellant was the source of the sperm [collected] in [C.B.]'s vaginal swab.

* * *

- 3 -

[Immediately thereafter,] [d]etectives who [had] interviewed [N.D. two years earlier] prepared a photospread [for her review]. They showed the photospread to [N.D.,] who picked the Appellant's photo "without hesitation" as the person who had assaulted and raped her. N.T., 4/22/16, at 22.

[On December 27, 2014,] an arrest warrant was issued for Appellant. Arrangements were made to have him taken into custody in Wisconsin and then extradited to Philadelphia for trial.

***

On April 25, 2016, following a jury trial…, Appellant was found guilty of two counts of rape, two counts of sexual assault, involuntary deviate sexual intercourse and aggravated assault. Sentence was deferred for the preparation of a Presentence Report, Mental Health Evaluation and a Megan's Law Assessment.

[O]n October 21, 2016, [following a Sexually Violent Predator ("SVP") hearing where] Appellant was determined to be an SVP, the court sentenced him to an aggregate term of thirty to sixty years' incarceration, to run consecutive to any sentence [Appellant was] currently serving. [Appellant filed] a post-sentence motion . . . on October 28, 2016, [which the trial court] denied . . . on November 1, 2016. A timely appeal to the Superior Court was filed on November 15, 2016.

Trial Court Opinion, 05/03/17, at 1-3.

Appellant presents the following questions for our review:

I.     **WHETHER THE TRIAL COURT ERRED BY DENYING [APPELLANT'S] MOTION TO CHANGE VENUE?**

II.    **WHETHER THE TRIAL COURT VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE?**

III.   **WHETHER THE TRIAL COURT VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?**

IV.    **WHETHER THE SENTENCE ENTERED BY THE TRIAL COURT WAS EXCESSIVE?**

- 4 -

Appellant's brief at 5.

In Appellant's first issue, he contends the trial court abused its discretion in denying his motion to change venue, as negative pretrial publicity had an unavoidably prejudicial effect upon potential jurors in Philadelphia County. We disagree.

> A request for a change of venue or *venire* is addressed to the sound discretion of the trial court, which is in the best position to assess the atmosphere of the community and to judge the necessity of the requested change. Absent an abuse of discretion, the trial court's decision will not be disturbed.
>
> A change of venue becomes necessary when the trial court determines that a fair and impartial jury cannot be selected in the county in which the crime occurred. ... Ordinarily, however, a defendant is not entitled to a change of venue unless he or she can show that pre-trial publicity resulted in actual prejudice that prevented the impaneling of an impartial jury. The mere existence of pre-trial publicity does not warrant a presumption of prejudice.
>
> There is an exception to the requirement that the defendant demonstrate actual prejudice. Pre-trial publicity will be presumed to have been prejudicial if the defendant is able to prove that the publicity was sensational, inflammatory, and slanted toward conviction, rather than factual or objective; that such publicity revealed the defendant's prior criminal record, if any, or referred to confessions, admissions, or reenactments of the crime by the defendant; or that it was derived from official police and prosecutorial reports. Even if the defendant proves the existence of one or more of these circumstances, a change of venue or *venire* is not warranted unless he or she also shows that the pre-trial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated.

***Commonwealth v. Chmiel***, 30 A.3d 1111, 1152–53 (Pa. 2011) (citations omitted). ***See also Commonwealth v. Briggs***, 12 A.3d 291, 313 (Pa. 2011)

- 5 -

(holding mere exposure to media reports does not render prospective juror incapable of service, "since, in today's 'information age,' where news of community events are disseminated virtually instantaneously by an ever multiplying array of delivery methods, it would be difficult to find 12 jurors who do not at least have some knowledge of the facts of [an important incident].").

During the change-of-venue hearing, Appellant argued that a Philadelphia jury could not possibly render an impartial and fair decision in his case given what he considered extensive pretrial publicity. The trial court heard evidence of a Philadelphia Police Department lieutenant "discussing Appellant's record in Wisconsin, calling [Appellant] brutal and not a good guy (N.T. 1/8/16, at 3)." Appellant's brief at 9. The lieutenant also stated in the press that Appellant, in the present criminal matter, "immediately took advantage, knocked them [N.D. and C.B.] almost unconscious, [and] removed their clothing, continuing to beat them until they had fractures and multiple facial fractures[,]" Appellant continues. *Id*. at 10. These media reports, Appellant maintains, appeared "when the crimes were happening, during the preliminary hearing and before jury trial of [Appellant]." *Id*.[1]

---

[1] Neither the notes of testimony from the change-of-venue hearing nor Appellant's brief indicate the dates of the media reports. Appellant informed the court, however, that he was presenting the reports in chronological order, N.T. at 3-4, and the last one concerned Appellant's arrest in Wisconsin, which the record elsewhere confirms took place in December of 2014.

Our review of the record reveals nothing supporting the contention that pretrial publicity formed in jurors a fixed opinion of Appellant's guilt that would deny him his right to a fair and impartial jury. Initially, we note that most of the challenged publicity appears to have occurred at the time of Appellant's arrest and preliminary hearing—nearly two years prior to the time of trial. *See* N.T. 1/8/16, at 2-5. Appellant otherwise fails to state when other alleged instances of pretrial publicity occurred other than to say vaguely they circulated "before jury trial."

Moreover, in denying Appellant's pretrial motion, the court indicated it would address any concerns during *voir dire* and, if necessary, with jury instructions at trial. N.T. at 5. During two days of *voir dire*, the court questioned two separate panels, each comprising approximately 50 potential jurors, about whether they had any knowledge of Appellant's case. Between the two panels, only six potential jurors indicated having prior knowledge through media exposure or other sources, and the court removed all six from further consideration. N.T. 4/18/16, at 15-16, 24; 4/19/16/ at 5-6, 15. Furthermore, at no time during the selection of the jury did Appellant renew his motion to change venue.

Therefore, Appellant fails to demonstrate that actual prejudice from pretrial publicity prevented the empaneling of an impartial jury. There was no showing that the Philadelphia community was saturated with negative pretrial publicity of his case, or that such publicity occurred too proximate in time to Appellant's trial to allow for any resultant prejudice to have dissipated.

In fact, the trial court ascertained that the extent of potential juror exposure to pretrial publicity was minimal, and it took the precaution of removing the few potential jurors able to recall the publicity. Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a change of venue.

Next, Appellant argues that evidence was insufficient to support his convictions. Our standard of review for challenges to the sufficiency of the evidence is well-settled:

> [When reviewing a challenge to the sufficiency of the evidence, the] standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542–43 (Pa. Super. 2015) (citation omitted). Further, it is well-settled that a victim's uncorroborated testimony is sufficient to sustain a jury's verdict. *Commonwealth v. Gonzalez* 109 A.3d 711, 721 (Pa. Super. 2015).

Appellant focuses his sufficiency claim on what he contends was the fatally compromised credibility of the two victim witnesses. Specifically, Appellant asserts that each victim's trial testimony conflicted with the information she gave to police when first reporting the crime.

With respect to C.B., Appellant maintains she initially told police she encountered Appellant at 2:00 a.m., subsequently testified in court that the time was between 12:00 a.m. and 1:00 a.m., and then changed her testimony on cross-examination to revert to her original time of 2:00 a.m. Appellant's brief at 11. Similarly, he says, C.B. offered inconsistent information on how many blocks she lived from the 7-Eleven store, ranging from "a couple" blocks away to eight blocks away. *Id*. She also admitted at trial to claiming falsely in her 911 call that her assailant was armed so police would arrive more quickly. *Id.*

As for N.D., Appellant attacks her testimony for similar inconsistencies respecting the time of the attack (ranging from 7 p.m. to 9 p.m.), for her uncertainty as to either the date or day of the week of the attack, and for her unsubstantiated contention that she called 911 that night and spoke with a dispatcher.

In directing his challenge entirely to the credibility of the witnesses, Appellant's challenge goes not to the sufficiency of the evidence but to the weight of the evidence. ***See Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa.Super. 2012) (stating claim that factfinder should have found witness's

version of events unreliable goes to weight, not sufficiency of evidence). As such, Appellant's sufficiency challenge fails.

Appellant relies on the same asserted inconsistencies to support his contention that the verdicts went against the weight of the evidence. Our well-settled standard of review states:

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant. Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

*Commonwealth v. Chamberlain,* 30 A.3d 381, 396 (Pa. 2011) (citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting *Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011)).

We discern no abuse of discretion in the trial court's conclusion in this regard, as it was within the province of the jury to assess the credibility of the witnesses. *See also Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006) ("[E]vidence at trial need not preclude every possibility of

innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."). To the extent there were testimonial inconsistencies regarding the precise time of night the victims encountered Appellant or the number of blocks separating C.B.'s home from the 7-Eleven, the jury clearly deemed such matters insignificant relative to the Commonwealth's considerable body of evidence offered to prove Appellant committed the crimes charged.

Here, the evidence included both DNA evidence matching Appellant to the semen sample collected from the rape kit of C.B. and an immediate positive identification of Appellant from a photo array shown to N.D. Moreover, the Commonwealth presented evidence of a virtually identical *modus operandi* between the two crimes, committed one year apart, involving young women approached at the same location, lured into a vehicle with the same promise of safe transport, taken to the same location, and brutally assaulted in the same manner. Because the jury's verdict does not shock one's sense of justice under this record, Appellant's weight claim fails.

Finally, Appellant challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before we address a challenge to the discretionary aspects of sentence, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super. 2006)).

Our review of the record shows that Appellant timely filed both a post-sentence motion, in which he requested reconsideration of his sentence, and a notice of appeal.

In Appellant's Pa.R.A.P. 2119(f) statement, he contends that his upward departure sentence[2] is "an excessive sentence that did not [reflect] sufficient consideration [of Appellant's] rehabilitative needs, the sentencing guidelines, and the Appellant's lack of prior record." Appellant's brief at 13. As such, Appellant's concise statement facially raises a substantial question that the sentence is appropriate. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) (assertions that sentence exceeded guidelines and court failed to consider rehabilitative needs raises substantial question).

---

[2] With a prior record score of zero and an offense gravity score of 12, the guideline range for each count of Rape was 48 to 66 months' incarceration, plus or minus 12 months, and for the count of Aggravated Assault was 36 to 54 months, plus or minus twelve months. *See* 204 Pa.Code § 303.16. Therefore, Appellant's sentence of 10 to 20 years on each conviction exceeded the top-end aggravated guideline range sentence of six and one-half years for each count of Rape and five and one-half years for Aggravated Assault.

We "cannot disturb a sentence that exceeds the sentencing guideline recommendations unless it is unreasonable." **Commonwealth v. Naranjo**, 53 A.3d 66, 72 (Pa.Super. 2012). The sentencing guidelines "are merely one factor among many that the court must consider in imposing a sentence" and are "purely advisory in nature." **Commonwealth v. Yuhasz**, 923 A.2d 1111, 1118 (Pa. 2007). Furthermore, with respect to assessing the rehabilitative needs of a defendant, where the court has reviewed a presentence report, it is considered to have appropriately weighed the requisite sentencing factors. **Naranjo**, **supra**.

Here, the trial court indicated that it carefully reviewed all sentencing documents, including the presentence report, the psychiatric evaluation, the Megan's Law assessment, and the sentencing guidelines. N.T. 10/21/16 at 42-43. Specifically, the court explained that an upward departure sentence was appropriate because the guideline sentencing ranges failed to capture the extreme level of gratuitous violence and inhumanity exhibited by Appellant against N.D. and C.B., and where the prior record score of zero failed to reflect the pervasiveness of Appellant's threat to others in the future as he subsequently demonstrated elsewhere prior to his arrest:

> This [Appellant's sentence] is above and beyond the guideline sentencing range. I've taken into consideration, carefully weighed this. Incorporate my preliminary remarks into the reasons for going above and beyond the sentencing guideline range, but it's very clear to me that the guidelines really do not capture and reflect the nature of this case and the facts with regard to this case or the evidence with regard to this case and the impact on the victims.

It doesn't take into account the preying nature, preying upon vulnerable women, luring them into your vehicle, taking them to a secluded, isolated area, brutalizing – they're brutal rapes along with the physical assaults that accompany them and the threats, and it doesn't stop there because you carried on this pattern into other jurisdictions where seemingly your behavior escalated to a certain degree because you incorporated strangulation to those situations.

So, clearly you are a threat to any community, any environment in which you are let loose. So that is the reason why this court has gone above and beyond the sentencing guideline ranges.

N.T. 10/21/16, at 41-42. Based upon the reasoning provided by the court, we conclude that sentencing Appellant above the guidelines was not unreasonable.

We must, however, vacate that portion of Appellant's judgment of sentence finding him to be an SVP, as that portion of the sentence is illegal.

Appellant did not challenge the trial court's order finding him to be an SVP and requiring him to register for life in accordance with section 9799.15(a)(6) of the Sexual Offender Registration and Notification Act ("SORNA"). 42 Pa.C.S.A. § 9799.15(a)(6). However, "challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court. An illegal sentence must be vacated." **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*).

In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that the registration requirements under SORNA constitute criminal punishment, thus overturning prior decisions determining those registration

- 14 -

requirements to be civil in nature. **Id.** On October 31, 2017, a panel of this Court held the following:

> [S]ince our Supreme Court has held [in **Muniz**] that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi** [**v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 133 S.Ct. 2151, 2163 (2013)], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in a predatory sexual violent offense[,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.
>
> ***
>
> [Thus], we are constrained to hold trial courts cannot designate convicted defendants SVPs (nor may they hold SVP hearings) until our General Assembly enacts a constitutional designation mechanism. Instead, trial courts must notify a defendant that he or she is required to register for 15 years if he or she is convicted of a Tier I sexual offense, 25 years if he or she is convicted of a Tier II sexual offense, or life if he or she is convicted of a Tier III sexual offense.

**Commonwealth v. Butler**, 173 A.3d 1212, 1217 (Pa. Super. 2017).

In light of **Muniz** and **Butler**, to which we are bound, we have no choice but to conclude that the portion of Appellant's sentencing order determining him to be an SVP is illegal. Here, the trial court conducted an SVP hearing and designated Appellant to be an SVP without making that necessary factual finding beyond a reasonable doubt. Therefore, we are compelled to vacate the trial court's SVP order, and, pursuant to **Butler**, we remand this case to

the trial court for the sole purpose of issuing the appropriate notice to Appellant under 42 Pa.C.S.A. § 9799.23 that he is required to register for life.

SVP Order vacated and case remanded for proceedings consistent with this decision. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 2/20/2018*