J-A02014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRANCE K. GRAHAM | : | |
| | : | |
| Appellant | : | No. 293 WDA 2020 |

Appeal from the PCRA Order Entered February 10, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001119-2010

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 22, 2021**

Terrance K. Graham appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Appellant's convictions arise from the deaths of Lynna Flippen, with whom Appellant had a child, and Ms. Flippen's friend, Ernest Yarborough.  The underlying facts are as follows, in pertinent part.  Shortly before 5:00 a.m. on May 13, 2010, the Pennsylvania State Police received a report of a burglary and assault in progress at a home in Ellsworth, Washington County.  They arrived to find blood between the master bedroom and a side door, a bloody metal pipe, and the bloody cell phone of Ms. Flippen from which the emergency call had been made.  However, there was no sign of Ms. Flippen or her son, and items of value had been left in plain view.  The police therefore set out to find them, proceeding first to places with which they had prior

connections. Police went to a nearby residence to which they had previously responded to a domestic disturbance between Ms. Flippen and Appellant.[1]

Meanwhile, shortly after 6:00 a.m., Erica Andrews was awakened by a call from Appellant. He asked her to pick him up at Petrick's on Route 917. However, as she drove, he instructed her to continue past Petrick's, eventually telling her that he saw her approaching. Appellant then stepped out from the woods, carrying his jacket balled-up in his arms. Ms. Andrews drove Appellant to his residence, where he exited the vehicle and told her he would call her later. As she pulled away, she observed Appellant begin to remove his shoes.

At 6:55 a.m., the police went to Appellant's residence, still trying to locate Ms. Flippen and her son. The police noted wet and muddy green sneakers on the porch. After knocking at the door for several minutes with no response, Appellant eventually appeared. He told the police that he had been sleeping after a late night at a club in Pittsburgh. Appellant consented to a search of his home, after which the troopers informed Appellant that they were trying to locate his son and Ms. Flippen. As soon as the troopers left, Appellant retrieved a black bag from his residence and the sneakers from the porch and drove away in his car.

_____

[1] Indeed, Appellant and Ms. Flippen had a tumultuous relationship, with each filing Protection from Abuse ("PFA") petitions against the other, and the two had been engaged in a custody dispute over their child.

Sometime after 7:00 a.m., Ms. Andrews received another call from Appellant informing her that he was on his way to her house. Appellant came into the home, removed her garbage bag from the can,[2] and took it outside, as it was garbage collection day. Ms. Andrews did not see Appellant dispose of the garbage bag, but did observe him with the green shoes in his hands shortly after he took the trash out. Thereafter, she and Appellant had a brief conversation before Appellant left.

Also shortly after 7:00 a.m., Vincent Varone went for his morning walk on Bustko Road, a rural road that intersected with Route 917. He encountered a vehicle parked on the side of the road and observed blood all around the car. Approaching more closely, Mr. Varone saw a woman lying motionless in the back seat wearing only a nightgown. He returned to his home and called 911. Police arrived at the scene, towed the car to the police barracks, and discovered the body of a deceased male unceremoniously forced into the trunk. It was later determined that the dead woman was Ms. Flippen, the man was Mr. Yarborough, and both had been subjected to blunt force trauma and gunshots from a .38 caliber weapon.

Back at Appellant's residence, the troopers had returned to find Appellant absent. When Appellant arrived shortly before 9:00 a.m., he agreed to accompany them to the barracks for an interview. As for his whereabouts

---

[2] Although Ms. Andrews often had difficulty removing the bag from the can, Appellant did not typically come to her house to offer this assistance.

that morning, Appellant maintained that he had been out at a nightclub and returned home at 3:30 a.m., where he remained until the troopers woke him up. When questioned about where he went after the troopers left, Appellant falsely claimed that he had gone to a nearby store for a beverage. Appellant denied having removed anything from his home. When specifically asked about the shoes and the black bag, Appellant contended that the bag was full of marijuana that he took out and burned after he had been informed of Ms. Flippen's disappearance, however he could not remember where he did so. After it was suggested that perhaps the shoes also contained marijuana, Appellant indicated that he did attempt to burn the shoes along with the bag, but he put them in the trash in front of a residence when they would not burn. He could not recall where the residence was.

When confronted with the fact that Ms. Andrews had given a statement that she picked Appellant up near the area where the bodies were found, Appellant first indicated that he had been turkey hunting. When he was unable to account for how he got to the hunting location or how long he was there, he reversed course and stated that Ms. Andrews had not picked him up that morning. Although the police provided Appellant with no information about Ms. Flippen's injuries, he referenced her having a crack in her head.

Appellant was arrested and charged with two counts of homicide, generally, as well as other crimes. A search warrant executed at his home and as to a vehicle he stored elsewhere resulted in the seizure of evidence

- 4 -

that Appellant had possessed a .38 caliber firearm, but not the firearm itself. Despite Appellant's claim that he cleared his home of marijuana following his initial interaction with police on the morning of the murders, police recovered marijuana and drug paraphernalia from Appellant's residence through execution of the warrant.

Appellant's counsel filed pre-trial motions to suppress and motions *in limine*. Specifically, counsel sought to prohibit the Commonwealth from offering at trial evidence of Appellant's May 13, 2010 statements, Appellant's pre-arrest silence during the police interview, the prior PFA petitions and orders that Ms. Flippen pursued against Appellant, and Appellant's possession of a .38 caliber firearm and ammunition. The suppression court denied all of Appellant's motions.

The case proceeded to trial at which the Commonwealth presented, over Appellant's objection, photographs depicting the victims' injuries and testimony from witnesses regarding the state of Appellant's relationship with, and prior acts of violence towards, Ms. Flippen. The Commonwealth also offered evidence that Appellant's phone connected with cell phone towers in the vicinity of where the bodies were found at the time he called Ms. Andrews for a ride. Additionally, evidence that marijuana was seized from Appellant's home was admitted to impeach his story about disposing of drugs after police initially questioned him about Ms. Flippen's disappearance. Appellant presented three defense witnesses to establish (1) that Ms. Flippen had

another paramour who had left Pennsylvania around the time of the murders, (2) the circumstances around the PFA litigation, and (3) that Appellant had no apparent defensive wounds when he was arrested.

Ultimately, the jury found Appellant guilty of all charges. After a presentence investigation, he was sentenced to two consecutive terms of life imprisonment, as well as concurrent sentences on other charges. Appellant's post-sentence motions seeking judgment of acquittal or a new trial were denied.

Appellant filed a timely direct appeal, challenging the denial of his motion to suppression his statements, the sufficiency and weight of the evidence, the jury instructions, and the admission of cell phone location data, evidence linking Appellant with a .38 caliber firearm, the photographs of the victims, and evidence of Appellant's prior abuse of Ms. Flippen. This Court, finding no merit in any of Appellant's claims, affirmed on the basis of the trial court's opinions.[3] *See Commonwealth v. Graham*, 68 A.3d 364 (Pa.Super. 2013) (unpublished memorandum). Our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *See Commonwealth v. Graham*, 74 A.3d 125 (Pa. 2013).

---

[3] This Court noted that Appellant failed to ensure that the challenged photographs were included in the certified record, and therefore deferred to the trial court's discretion. *See Commonwealth v. Graham*, 68 A.3d 364 (Pa.Super. 2013) (unpublished memorandum at 4 n.1).

Appellant timely filed the PCRA petition that is the subject of the instant appeal on August 20, 2014. Following appointment of counsel, supplemental petitions, requests for extensions, and a motion to proceed *pro se*, the PCRA court conducted a **Grazier**[4] hearing in April 2016, and granted Appellant's request to represent himself. Following discovery and multiple extensions requested by Appellant, he filed his final amended PCRA petition in May 2018. Appellant thereafter requested stays of the proceedings pending transfer to a different correctional facility.

Eventually, the PCRA court issued a twenty-nine-page notice of its intent to dismiss Appellant's petition without a hearing. Appellant filed a forty-eight-page objection in response. The PCRA court dismissed Appellant's petition nonetheless. Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents twelve issues for our review, which we have reordered for ease of disposition:

1.    Did trial counsel provide ineffective assistance of counsel when he failed to investigate evidence he sought to exclude from trial which violates U.S. Constitution Amendment VI, and PA Constitution Article I, § 9?

2.    Was trial counsel ineffective when he failed to present evidence in the suppression hearing and stipulated to the evidence he sought to exclude from trial in violation of U.S.

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (requiring an on-the-record colloquy to determine that waiver of the right to PCRA counsel is knowing and voluntary).

Constitution Amendments VI & XIV, and PA Constitution Article I, § 9?

3.  Did trial counsel provide ineffective assistance of counsel by failing to file a motion *in limine* to exclude evidence, specifically drug evidence from a separate criminal case and other crimes in violation of U.S. Constitution Amendments VI & XIV, and PA Constitution Article I, § 9?

4.  Did trial counsel provide ineffective assistance of counsel by failing to request a curative and limiting instruction concerning "prior bad acts" evidence which violates U.S. Constitution Amendment VI, and PA Constitution Article I, § 9?

5.  Did trial counsel provide ineffective assistance of counsel for failing to request the limiting instruction regarding drug evidence that counsel promised the jury they would receive in his opening statement in violation of U.S. Constitution Amendments VI & XIV, and PA Constitution Article I, § 9?

6.  Did trial counsel provide ineffective assistance of counsel by failing to present a "mere presence" defense, and failing to request a "mere presence" jury instruction in violation of U.S. Constitution Amendment VI, and PA Constitution Article I, § 9?

7.  Did . . . Appellant's direct appeal counsel provide ineffective assistance of counsel by failing to prepare, quash written stipulations and perfect Appellant's direct appeal in violation of U.S. Constitution Amendments I, V, VI & XIV, and PA Constitution Article I, § 9 and PA Constitution Article V, § 9?

8.  Did trial counsel provide ineffective assistance of counsel by failing to object to false testimony and present exculpatory evidence in violation of U.S. Constitution Amendments VI & XIV, and PA Constitution Article I, § 9?

9.  Did trial counsel provide ineffective assistance of counsel by failing to object to the trial court's instruction on the offense of burglary in violation of U.S. Constitution Amendments VI & XIV, and PA Constitution Article I, § 9?

10. Did trial counsel provide ineffective assistance of counsel by failing to produce evidence during trial to support firm assertions he made in his opening statement, then reiterated in his closing arguments in violation of U.S. Constitution Amendments V, VI & XIV, and PA Constitution Article I, § 9?

11. Did the withholding of exculpatory evidence by the Commonwealth violate U.S. Constitution Amendments V, VI & XIV, PA Constitution Article I, § 9, Pa.R.Crim.P. 573(B), and the decision in *Brady v. State of Maryland*?

12. Does the fact that the trial court's admitted criminal acts which brought forth proof of the former court's prior bad acts, drug addiction and involvement with illegal drugs during the time of . . . Appellant's proceedings substantiate the denial of fundamental fairness in . . . Appellant's trial process which is in violation of U.S. Constitution Amendments V, VI & XIV, and PA Constitution Article I, § 9, PA Constitution Article VI, § 3 and Judicial Cannons 2A & B?

Appellant's brief at 3-4 (unnecessary capitalization omitted).

We begin with a review of the applicable law. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa.Super. 2017). However, we not bound by the PCRA court's reasoning, and may affirm its decision on any basis. *See*, *e.g.*, *Commonwealth v. Thompson*, 199 A.3d 889, 892 n.4 (Pa.Super. 2018). To prevail, Appellant must persuade this Court both "that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted).

Appellant's first ten claims challenge his counsel's performance. We observe that counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." *Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa.Super. 2020) (internal quotation marks omitted).

The first prong requires the petitioner to establish that there is merit to his underlying legal claim, for "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006). "With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011) (cleaned up). "To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id*. at 442-43. Our Supreme Court has made it clear that "boilerplate allegations and bald assertions of no reasonable basis and/or

- 10 -

ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Id*. at 443.

"A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Selenski*, *supra* at 15 (cleaned up). The petitioner must present argument on each prong of the ineffectiveness test in his brief, and, if any is lacking, we may proceed to that element first in denying relief. *See*, *e.g.*, *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019).

For each of Appellant's first eight issues, he states either no allegation of prejudice or mere bald, boilerplate allegations thereof. *See* Appellant's brief at 10, 13, 16, 17 (stating bald and/or boilerplate assertions of prejudice for issues 1-6); *id*. at 22-29 (including no allegations of prejudice in his arguments for issues 7-8). For those claims, Appellant provides this Court with no meaningful analysis of how counsel's acts or omissions undermine confidence in the outcome of the proceedings. Consequently, we affirm the PCRA court's dismissal of these claims on that basis.[5] *Accord*

---

[5] In addressing these claims in its opinion, the PCRA court at times relies in whole or in part on its conclusion that counsel's chosen course was a reasonable trial strategy. *See*, *e.g.*, PCRA Court Opinion, 7/13/20, at 25 (opining that trial counsel had a reasonable basis for not requesting a limiting instruction). However, no PCRA hearing was held in this case to establish trial and appellate counsels' bases for their acts or omissions. We remind the PCRA court that "generally, the court should not glean from the record whether counsel had a reasonable basis for his action or inaction absent an evidentiary hearing, and that it is only in the most clear-cut cases that the reasons for

*Commonwealth v. Natividad*, 938 A.2d 310, 324 (Pa. 2007) (holding bald allegation that the petitioner was prejudiced by counsel's failure to object was insufficient to establish the prejudice prong of ineffectiveness test).

In his ninth issue, Appellant maintains that trial counsel was ineffective in failing to object to the trial court's jury instruction on burglary. He contends that the lack of allegations of burglary in the criminal information precluded the charge. *See* Appellant's brief at 18. Appellant argues that the Commonwealth first raised the burglary allegations during the charging conference, and it was "an ambush that counsel allowed to happen" by failing to object then or after the charge. *Id*. at 19.

The PCRA court determined that Appellant's claim lacked arguable merit. It noted that Appellant was charged with criminal homicide generally. *See* PCRA Court Opinion, 7/13/20, at 34. *See also* 18 Pa.C.S. § 2501.[6] Since the

---

counsel's conduct are apparent from the record." *Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011). Nonetheless, this Court is not bound by the PCRA court's reasoning and may affirm its decision on an alternate basis that is supported by the record. *See*, *e.g.*, *Commonwealth v. Wiley*, 966 A.2d 1153, 1157 (Pa.Super. 2009).

[6] The criminal homicide statute provides as follows:

> **(a) Offense defined**.--A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

> **(b) Classification**.--Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter.

18 Pa.C.S. § 2501.

Commonwealth contended that the killings were connected with a burglary of Ms. Flippen's residence, "it was necessary for the trial court to instruct the jury on burglary so that they could determine if [Appellant] committed second[-]degree murder." PCRA Court Opinion, 7/13/20, at 35.

We agree that Appellant's claim fails the arguable-merit prong of the test. First, we note that counsel did take exception to the jury receiving a second-degree murder charge. *See* N.T. Trial, 6/8-14/11, at 804-05. Moreover,

> It is well-settled that where there is no bill of information charging felony murder, the prosecution is, nevertheless, not precluded from advancing a theory that there was an underlying felony and the trial court may charge the jury as to the elements of felony murder provided it is supported by evidence adduced during trial.

*Commonwealth v. Madison*, 462 A.2d 228, 232 (Pa. 1983). Appellant does not dispute that the evidence at his trial, particularly the lack of any theft or disturbance of the child's bedroom and the viciousness of the attack directed at the occupants of the master bedroom, supported the Commonwealth's theory that Appellant entered the home with the intent to assault her therein. *See* N.T. Trial, 6/8-14/11, at 35-36. Accordingly, no relief is due.

Appellant's tenth issue is that trial counsel was ineffective in "failing to produce evidence during trial to support assertions he made in his opening statement, and then reiterated in his closing arguments." Appellant's brief at 31. As for the statement and arguments, Appellant references counsel's indications to the jury that they should pay attention to the specific

circumstances of the PFA litigation, that DNA evidence from the bloody metal pipe and vehicle suggested that the perpetrator of the crimes was someone of a different race than Appellant, and that there are many different types of firearms that could have been involved. *Id*. at 32, 34-35. Yet, Appellant contends, counsel failed to produce evidence to support any of these contentions. *Id*. at 35.

Notably absent from Appellant's argument is any indication that evidence existed that counsel could have used, but did not; that there was a course counsel could have taken that offered a better chance of success, or that the result of the proceeding would have been different if counsel had utilized this unidentified additional evidence. Examining counsel's opening and closing, it does not appear that counsel promised to produce any witness or piece of evidence, but failed to secure it for the jury's consideration. Rather, the evidence that he asked the jury to examine closely largely came in during the Commonwealth's case-in-chief, through defense counsel's cross-examination. Counsel also offered witnesses to establish that Ms. Flippen had been involved with another man who had been staying at a hotel nearby, that Ms. Flippen's PFA allegations may have been motivated by her mental health issues and/or efforts to prevail in child custody litigation, and that Appellant had no bruises, cuts, or other injuries when he was processed at the jail on the day of the murders. Counsel deftly revisited the evidence and argued

during his closing that it suggested that someone other than Appellant committed the crimes.

To prevail, Appellant must persuade this Court both "that the PCRA court erred and that relief is due." *See Stansbury*, *supra* at 161 ("It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." (internal quotation marks omitted)). In short, Appellant has failed to persuade us that he sufficiently alleged any of the elements of his ineffective assistance claim to warrant relief from this Court. Consequently, we have no basis to disturb the PCRA court's dismissal of his final ineffective assistance claim.

In his eleventh issue, Appellant asserts that the Commonwealth withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (holding prosecution's withholding of evidence favorable to the accused violates due process). To succeed on a *Brady* claim, a petitioner must establish each of the following elements: (1) that the Commonwealth suppressed evidence that was (2) favorable to the accused because it is exculpatory or impeaching, and (3) the evidence was material, such that its omission resulted in prejudice. *Commonwealth v. Natividad*, 200 A.3d 11, 25-26 (Pa. 2019).

Initially, "[t]he burden rests with [the petitioner] to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Sneed*, 45 A.3d 1096, 1116 (Pa. 2012). Additionally, "a

- 15 -

prosecutor's disclosure obligation encompasses only information known or readily ascertainable by the government actors involved in the prosecution." *Commonwealth v. Weiss*, 81 A.3d 767, 792 (Pa. 2013). "[N]o *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1091 (Pa. 2020) (cleaned up). Further,

> the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Roane*, 142 A.3d 79, 89 (Pa.Super. 2016) (cleaned up, emphasis omitted).

It is difficult to discern from Appellant's brief precisely what evidence underlies his *Brady* claim, but it appears to be DNA samples or test results from the interior of the vehicle in which the bodies of Ms. Flippen and Mr. Yarborough were found.[7] *See* Appellant's brief at 20-22. Appellant seems to

---

[7] To the extent that Appellant references other items or filings by name or docket number, but does not provide us with any meaningful discussion of how they pertain to any evidence that was withheld, we find his contentions related to those items waived. *See Commonwealth v. Briggs*, 12 A.3d 291, 342 (Pa. 2011) (finding claim waived where it was incorporated by reference rather than developed in appellate brief); *Commonwealth v. Samuel*, 102

suggest that, while he had access to the results of forensic testing that showed some DNA belonging neither to Appellant nor either victim, the Commonwealth either had information concerning the identity of this other individual that was not provided to him, or should have discovered that information. *Id*. at 22 ("Since the DNA does not belong to the Appellant, it is only fair for the Appellant to be able to know to whom the DNA does belong.").

The PCRA court noted that Appellant failed to identify any withheld evidence with specificity, demonstrate that trial counsel did not have access to the evidence in question, or establish that the supposedly-withheld evidence was actually exculpatory. *See* PCRA Court Opinion, 7/13/20, at 36. It concluded that Appellant's ***Brady*** claim was "a bald accusation based entirely upon speculation," noting that Appellant "offered no specific details of the alleged exculpatory evidence in question, and nothing to support his claim." *Id*. at 35.

We agree. For all his references to the forensic evidence that was produced, Appellant does not point to any evidence that was in the possession of the Commonwealth, to which Appellant lacked equal access, that was exculpatory, and that, if produced, was reasonably likely to have changed the

---

A.3d 1001, 1005 (Pa.Super. 2014) ("The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." (cleaned up)).

outcome of the proceeding. Rather, his argument is mere conjecture that "someone knows something." Appellant's brief at 21. As such, Appellant has failed to meet his burden of persuading us that the PCRA court erred in rejecting his **Brady** claim. **Accord Sneed**, **supra** at 1116 (denying relief on a **Brady** claim were the appellant "failed to prove the existence of the allegedly exculpatory evidence, let alone that it was material and deprived him of a fair trial").

Finally, Appellant contends that he did not receive a fair trial because it later came to light that the judge who presided over his jury trial (1) "was a cocaine addict, who was using his courtroom and his positions to secure the drugs that he would use,"[8] and (2) had a history of domestic abuse that was hidden through the PFA records being sealed. Appellant's brief at 30. Appellant maintains that these facts create an appearance of judicial impropriety, warranting relief in the absence of a showing of actual prejudice. *Id*. at 31 (citing **Joseph v. Scranton Times L.P.**, 987 A.2d 633 (Pa. 2009)).

---

[8] Appellant's trial judge was Paul Pozonsky. It was revealed not long after Appellant's trial that for several years, "Pozonsky directed police officers to deposit cocaine, which had been entered into evidence in cases he presided over, in an evidence locker in his courtroom. Pozonsky then surreptitiously removed cocaine from the locker for his personal use." **Commonwealth v. Urwin**, 219 A.3d 167, 170 (Pa.Super. 2019) (citations omitted). "Shortly after his conduct was discovered, Pozonsky resigned from the bench [in June 2012]. He was arrested and convicted of crimes relating to his theft. Pozonsky was also disbarred by order of the Pennsylvania Supreme Court." *Id*. (citations omitted).

- 18 -

"A jurist's impartiality is called into question whenever there are factors or circumstances that may [make one] reasonably question the jurist's impartiality in the matter." ***In Interest of McFall***, 617 A.2d 707, 713 (Pa. 1992). Indeed, a judge may be disqualified, and new proceedings required, where there exists even the appearance of prejudice, as "[t]he appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of either of these elements." ***Id***. For example, "[a] judge cannot be a jurist in his own case and must not be permitted to try cases where she has an interest in the outcome." ***Id***. (holding appearance of impropriety existed where judge presided over cases while being investigated by the same office for misconduct).

The PCRA court determined that Appellant's claim warranted no relief because the trial judge's PFA litigation had taken place long before Appellant's trial, and there was no indication that he was impaired while conducting Appellant's trial or that his drug use impacted his ability to be impartial. ***See*** PCRA Court Opinion, 7/13/20, at 43-44. We agree.

Appellant does not allege that the trial judge was subject to prosecution or any investigation by the office of the Washington County District Attorney at the time of Appellant's trial or sentencing. ***Cf. Commonwealth v. Cain***, 29 A.3d 3, 8 (Pa.Super. 2011) (suggesting that judge presiding over trial created the appearance of impropriety if the judge "had knowledge that, at the time he presided over Appellant's trial and sentencing, he faced criminal

investigation from Appellant's prosecutors"). Nor does he allege that the trial judge was under the influence while presiding over the trial. **See Commonwealth v. Urwin**, 219 A.3d 167, 172 (Pa.Super. 2019) (denying PCRA relief in challenge to Judge Pozonsky presiding over the petitioner's non-jury trial where the petitioner offered "no evidence to demonstrate that Judge Pozonsky was under the influence at the time of trial"). Moreover, we fail to see how the fact that Appellant's trial judge had been the subject of a PFA for his domestic abuse of his ex-wife a decade before Appellant's trial creates the appearance of bias or prejudice against Appellant. In sum, Appellant has failed to point to facts and relevant case law that suggest that his due process rights were violated by having a disqualified judge preside over his jury trial and sentencing. **See Commonwealth v. Koehler**, 229 A.3d 915, 931 (Pa. 2020) (providing that the PCRA provides relief for due process claims premised on judicial bias).

For the foregoing reasons, Appellant has failed to satisfy his burden of persuading this Court that the PCRA court erred and that relief is due. **See Stansbury**, **supra** at 161. Therefore, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/2021